In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-395 CR


____________________



JERRY LILLARD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. 24309






MEMORANDUM OPINION


 The Texas Court of Criminal Appeals remanded this case for reconsideration of the
factual sufficiency of the evidence in light of the Court's recent opinion in Watson v. State,
204 S.W.3d 404 (Tex. Crim. App. 2006). See Lillard v. State, No. PD-825-06, 2006 WL
3518127 (Tex. Crim. App. Dec. 6, 2006) (not designated for publication). (1) As we set out in
our prior opinion, the indictment charged Jerry Lillard with theft of a tractor, bush hog, two
garden tillers, and U.S. currency from Mary Dorsett. The jury found Lillard guilty of felony
theft, and the trial court sentenced him to ten years in prison and imposed a $5,000 fine.

 A person commits the offense of third-degree felony theft if the person (a) unlawfully
appropriates property (b) with intent to deprive the owner of the property, and (c) the value
of the property stolen is $20,000 or more, but less than $100,000. Tex. Pen. Code Ann. §
31.03(a), (e)(5) (Vernon Supp. 2006). The Penal Code states, "When amounts are obtained
in violation of [the Penal Code's theft chapter] pursuant to one scheme or continuing course
of conduct, whether from the same or several sources, the conduct may be considered as one
offense and the amounts aggregated in determining the grade of the offense." Tex. Pen.
Code Ann. § 31.09 (Vernon 2003).

Standard of Review 


 Lillard raises four issues regarding the legal and factual sufficiency of the evidence. 
In assessing legal sufficiency, the relevant question is whether, after viewing the evidence
in the light most favorable to the verdict, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Powell v. State, 194 S.W.3d 503,
506 (Tex. Crim. App. 2006) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979)). In a legal sufficiency review, the reviewing court does not re-weigh
the evidence or substitute its judgment for that of the jury. See Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). The jury evaluates witness credibility, determines the
weight accorded to witness testimony, and reconciles conflicts in the evidence. Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

 The Court of Criminal Appeals stated in Marshall that "[a] factual-sufficiency review
is 'barely distinguishable' from a Jackson v. Virginia legal sufficiency review." Marshall,
210 S.W.3d at 625 (quoting Watson, 204 S.W.3d at 415). Nevertheless, the Court has said
"the distinction is a real one[.]" Watson, 204 S.W.3d at 415. In a factual sufficiency
challenge, the reviewing court considers all the evidence in a neutral light and sets aside the
verdict only if the evidence is so weak that the jury's verdict seems clearly wrong and
manifestly unjust or if, considering conflicting evidence, the jury's verdict is against the great
weight and preponderance of the evidence. See Marshall, 210 S.W.3d at 625-26; Watson,
204 S.W.3d at 414-15. The appellate court is to give due deference to the findings of the
fact-finder. See Marshall, 210 S.W.3d at 625 (citing Watson, 204 S.W.3d at 415, 417). "An
appellate court judge cannot conclude that a conviction is 'clearly wrong' or 'manifestly
unjust' simply because, on the quantum of evidence admitted, he would have voted to acquit
had he been on the jury." Watson, 204 S.W.3d at 417. "Nor can an appellate court judge
declare that a conflict in the evidence justifies a new trial simply because he disagrees with
the jury's resolution of that conflict." Id. As Watson stated, "[A]n appellate court must first
be able to say, with some objective basis in the record, that the great weight and
preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict before
it is justified in exercising its appellate fact jurisdiction to order a new trial." Id. 

Theft


 Lillard challenges the sufficiency of the evidence on two of the elements of theft: 
"intent to deprive" and the value of the stolen property. The Texas Penal Code defines
"deprive" as follows: 

 (A) to withhold property from the owner permanently or for so extended a
period of time that a major portion of the value or enjoyment of the
property is lost to the owner;

 (B) to restore property only upon payment of reward or other compensation;
or

 (C) to dispose of property in a manner that makes recovery of the property
by the owner unlikely.


Tex. Pen. Code Ann. § 31.01(2) (Vernon Supp. 2006). The Penal Code defines "value" as
the fair market value of the property or service at the time and place of the offense, or if the
fair market value cannot be ascertained, the cost of replacing the property within a reasonable
time after the theft. Tex. Pen. Code Ann. § 31.08(a) (Vernon 2003). The Court of Criminal
Appeals has defined fair market value as "the dollar amount the property would sell for in
cash, given a reasonable time for selling it." Simmons v. State, 109 S.W.3d 469, 473 (Tex.
Crim. App. 2003) (citing Keeton v. State, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991)).

Background


 After Mary Dorsett and her sister met Lillard in 2001, he would "drop by" their home
on a "regular basis" to see "how things were going." He said he knew their mother and
brother, although the brother denied knowing him and Mary testified Lillard only met her
mother once. Lillard began doing odd jobs for the sisters. Over the course of time, he
suggested various deals, including the sale of some of the Dorsetts' real property, the renting
of their pasture, and the sale of their horses. As described by an investigator for the Angelina
County sheriff's office, Lillard's pattern was to continuously come to the Dorsetts and say
he needed more money for various things; in response, they would write him checks and
sometimes give him cash. The investigator also testified the Dorsetts felt they had been
"conned" by Lillard. 

 Mary Dorsett testified Jerry Lillard lied to her, "tricked" her, and stole her property. 
She described how he took money under false pretenses; how he stole her tillers; how he
bilked her out of money in a land scheme he orchestrated; and how he agreed to do certain
work for her, but did not complete the work or return her property. The alleged work
included farm maintenance and repairs on a tractor and bush hog. Mary described how
Lillard took the tractor and bush hog from her property and did not return it to her even after
repeated requests to do so. Lillard also told her some of her property taxes had not been paid,
and she wrote him checks with the understanding he would pay those taxes for her. Dorsett
said she discovered she had already paid some of those taxes. Although Lillard had receipts
showing he paid some of the taxes, the amounts he took from Dorsett for the taxes were
greater than the sums he paid to the property taxing authorities. Dorsett also gave Lillard
money to handle the filing of her income taxes, but he never did so; Dorsett had to tend to
the taxes herself. 

Intent-to-Deprive Element


 With respect to evidence of the intent-to-deprive element, Lillard maintains he and
the Dorsett sisters had an ongoing working relationship, and he argues the evidence is legally
and factually insufficient to show he intended to permanently deprive them of the tractor, the
money, and other property. See Tex. Pen. Code Ann. § 31.01(2) (Vernon Supp. 2006). The
intent to deprive is determined from the accused's words and acts. King v. State, 174 S.W.3d
796, 810 (Tex. App.--Corpus Christi 2005, pet. ref'd) (citing Griffin v. State, 614 S.W.2d
155, 159 (Tex. Crim. App. 1981)). The fact-finder may infer intent from any facts that tend
to prove its existence, including the method of committing the crime. Id. at 811. Here, the
indictment alleged theft by deception. Deception means the following: 

 (A) creating or confirming by words or conduct a false impression of law or
fact that is likely to affect the judgment of another in the transaction, and that
the actor does not believe to be true;

 . . . .

 (E) promising performance that is likely to affect the judgment of another in
the transaction and that the actor does not intend to perform or knows will not
be performed, except that failure to perform the promise in issue without other
evidence of intent or knowledge is not sufficient proof that the actor did not
intend to perform or knew the promise would not be performed. 


Tex. Pen. Code Ann. § 31.01(1)(A), (E) (Vernon Supp. 2006). There is evidence in the
record of a pattern of conduct whereby Lillard -- intentionally creating false impressions of
fact, and promising, but not intending to perform -- took two tillers, a tractor and bush hog,
money from a land deal, and money for various jobs he claimed he would perform. Mary
testified Lillard had tricked her out of over $20,000, which did not include the tractors or
bush hog. She said she wrote him checks for work he did not do, for bills he never paid, and
for a land deal in which he pocketed the money belonging to her. 

 As to the tractor, Mary testified Lillard agreed to repair a diesel tractor for her. The
tractor had a bush hog with it. Mary said Lillard removed the tractor and bush hog from her
property, but never returned the equipment to her. His explanation was that it belonged to
Mary's mother, who had instructed him "not to take the tractors back to the property." 
Dorsett testified Lillard offered the excuse of a snakebite for his failure to return the
equipment. On another occasion, he said he had colon cancer, although he later testified the
diagnosis was a mistake. Lillard testified Dorsett never asked him to return the tractor. Mary
testified they did not have their tractors for "at least" a year and a half.

 As to the tillers, K. E. Thompson, the owner of Bargains R Us, testified Lillard said
he was selling the tillers for the Dorsetts. Thompson bought the tillers. Mary testified that
when she found out the tillers were missing, she called Lillard. She said he told her he had
taken the big tiller to his house because he was afraid people could walk off with it and it
would be safer there. Mary also testified Thompson called her and wanted to know if she
was missing anything. She told him she was missing two tillers; she paid $125 to get the
tillers back. 

 The record supports the jury finding of intent to deprive. Viewing the evidence in a
light favorable to the verdict, a rational trier of fact could have found that element beyond
a reasonable doubt. There is evidence Lillard withheld the tractor and bush hog, the tillers, 
and Mary's money from her for an extended period of time so that she was deprived of the
enjoyment of the property. Further, viewing all the evidence in a neutral light, the great
weight and preponderance of the evidence on the intent-to-deprive element does not
contradict the jury's verdict. 

Value Element 


 To prove the value of the property was at least $20,000, the State relied on Dorsett's
testimony and on State's Exhibit 6, a summary of various checks Dorsett wrote to Lillard
over the course of a two-year period. In describing monies Lillard had taken from her,
including cash and the checks listed on the exhibit, Dorsett testified as follows: 

 After I found out actually what was going on with this whole situation . . . I
went back on my notes and everything and I actually figured it up with the
cash that I could remember that I had paid him, plus all of the checks, and it
came to over $20,000. That did not include the tractors, . . . the diesel or the
gasoline, or the bush hog. 

 . . . .

 [I]t was . . . over $20,000 that I have figured up that I had paid him--that he
had tricked me out of since I knew him in 2001.


Both the State and defense counsel elicited detailed testimony about the individual checks
on the list. Dorsett acknowledged that Lillard sometimes performed work for her, and some
of the checks on the list were payments for that work. Those specific checks, along with
other checks (on the list) that Dorsett could not remember, are not evidence of theft. 

 The largest check in Exhibit 6 was for $8,000, $7,000 of which Dorsett testified was

for reimbursement of the buyer's earnest money on a land deal. Dorsett explained Lillard
had wanted her to sell some of the real property she owned jointly with her siblings. She
described how Lillard handled the land deal for her, took money from the prospective buyer
for the down payment, and gave her $5,000. She later found out the buyer's down payment
was $7,000, and Lillard kept the remaining $2,000 for himself. Dorsett testified she used the
$5,000 cash he did give her to pay him for work he did for her. After the land deal collapsed,
Dorsett wrote Lillard the $8,000 check for him to reimburse the buyer, but Lillard never gave
the money to the buyer. 

 Lillard disputed Dorsett's account. He testified he did not initiate the land deal, and
the $8,000 check made out to him was not for the return of the earnest money. A notation
Dorsett handwrote on the check stated "farm labor." Dorsett explained she wrote on the
checks whatever Lillard told her to write; he denied that. She testified the $8,000 was not
for farm labor. Ultimately, Dorsett retained an attorney to assist her in regaining the personal
property she claims Lillard stole from her, and, through her attorney, she reimbursed the
buyer his $7,000 down payment. 

 In addition to the $8,000 check, Dorsett testified to other checks she wrote to Lillard
and through which she claims he stole from her. These checks included real property taxes
that she said she had already paid ($600); money for a four-wheeler on which Lillard had
promised her a refund ($848); money for a land survey he never had done ($287); payment
for work he did not do ($700); and money for handling her income taxes ($968). As
supported by Dorsett's testimony and Exhibit 6, the total of those checks is $11,403.

 In addition to the checks, tractor, bush hog, and tillers, Dorsett testified that she used
cash to pay Lillard, and she testified the total amount taken by Lillard under false pretenses
was over $20,000. The only cash mentioned specifically, other than in Dorsett's summary
testimony concerning cash amounts, was $5,000. At one point, Dorsett appeared to concede
the $5,000 cash should not be included in calculating the total because it was for work
actually performed. Her testimony is ambiguous regarding whether she gave Lillard the cash
in payment for work performed. 

 Lillard maintains he earned the money or was properly reimbursed for amounts
Dorsett owed him. Lillard also testified he kept records of his dealings with the Dorsetts, but
all his receipts were taken from his house after his arrest.

 Dorsett testified the value of the tractor was approximately $4,000, and the value of
the attached bush hog was from $300 to $3,000. She indicated she could not pinpoint the
bush hog's value more precisely. Lillard, who explained he had worked for a tractor
company and had rebuilt many tractors, valued the tractor at $2,500 and the bush hog at
$500. Lillard argues Dorsett's testimony regarding value is insufficient because it is not
supported by expert testimony and the amount is merely an estimate. However, an owner
may testify to the value of her own property. Sullivan v. State, 701 S.W.2d 905, 908 (Tex.
Crim. App. 1986); Valdez v. State, 116 S.W.3d 94, 98 (Tex. App.--Houston [14th Dist.]
2002, pet. ref'd) ("[O]wner may testify in terms of purchase price or replacement cost, and
is presumed to be testifying to an estimation of fair market value."). Should the defendant
wish to rebut the owner's testimony, the defendant must offer controverting evidence of the
property's value. Morales v. State, 2 S.W.3d 487, 489 (Tex. App.--Texarkana 1999, pet.
ref'd). Lillard did not object to the value given by Dorsett for the tractor and bush hog; he
did offer his own opinion of the tractor's value. The jury could have accepted Dorsett's
$4,000 valuation of the tractor, $3,000 higher-range valuation on the bush hog, and the cash
taken under false pretenses. See Ray v. State, 106 S.W.3d 299, 301-02 (Tex. App.--Houston
[1st Dist.] 2003, no pet.) (range of value).

 In summary, Dorsett testified generally that Lillard had "tricked" her out of "over
[$]20,000." Disputing much of her testimony, Lillard testified he loaned the Dorsett sisters
over $9,000, paid their taxes for various years, bought the Dorsetts various equipment parts
totaling almost $2,000, and did work for them. The evidence on the element of value is
conflicting. 

 In a legal sufficiency review, we look at all of the evidence in the light most favorable
to the verdict to determine whether the evidence is sufficient to convict. Vodochodsky v.
State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We consider the totality of the
circumstances. Id. Dorsett testified about the checks Lillard had obtained from her under
"false pretenses." She also testified of cash she had on hand to pay him for work he claimed
to have done, but did not do, and expenses he represented he incurred. She testified to the
value of the tractor, bush hog, and tillers and explained under what circumstances they were
never returned. Lillard testified he did the work she asked him to do, and he said he loaned
Dorsett money. He also indicated Dorsett gave him the tillers and offered various reasons
for not returning the tractor and bush hog. The jury was free to resolve the conflicts in the
evidence. Valdez, 116 S.W.3d at 99. A rational jury could conclude from the evidence of
the checks, cash, tractor, bush hog, and tillers that Lillard intended to deprive Dorsett of the
money and goods, and the total was $20,000 or more, but less than $100,000. The evidence
is legally sufficient.

 The reviewing court considers all the evidence in a neutral light in a factual
sufficiency review. See Marshall, 210 S.W.3d at 625. "Unless the available record clearly
reveals a different result is appropriate, an appellate court must defer to the jury's
determination concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered." Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim.
App. 2000). The evidence regarding the amount of cash taken and the value of the tractor,
bush hog, and tillers, though conflicting, does not warrant reversal and remand for a new trial
in light of the Court of Criminal Appeals holding in Watson. The total comes to over
$20,000; the presence of contrary evidence alone is not enough to justify a finding of factual
insufficiency. See Watson, 204 S.W.3d at 417. We give due deference to the jury's
determination concerning credibility and the weight to give contradictory testimonial
evidence. See Johnson, 23 S.W.3d at 8. Applying the standard of review as set forth in
Watson and Marshall, the evidence is factually sufficient. See Marshall, 210 S.W.3d at 625;
Watson, 204 S.W.3d at 414-15. Issues one, two, three, and four are overruled. 

 In issue five, Lillard also argues the trial court erred in failing to find he was totally
indigent and in requiring him to pay a portion of the cost of the reporter's record. He states
he "had no assets or money to pay for the Reporter's Record." This issue is moot as
appellant has caused a reporter's record to be filed in this case, and we have considered it on
appeal. See Fleming v. State, 987 S.W.2d 912, 922 (Tex. App.--Beaumont 1999), pet.
dism'd, improvidently granted, 21 S.W.3d 275 (Tex. Crim. App. 2000); Reyna v. State, 797
S.W.2d 189, 194 (Tex. App.--Corpus Christi 1990, no pet.). Issue five is overruled. The
judgment of conviction is affirmed. 

 AFFIRMED. 


 ____________________________

 DAVID GAULTNEY

 Justice



Submitted on January 30, 2007

Opinion Delivered May 9, 2007

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. In our prior opinion, we found the evidence factually insufficient to support the
conviction and reversed and remanded the case for a new trial. Lillard v. State, No. 09-04-395-CR, 2006 WL 950097 (Tex. App.--Beaumont Apr. 12, 2006) (not designated for
publication), vacated and remanded, 2006 WL 3518127 (Tex. Crim. App. Dec. 6, 2006). We
now reexamine the issue in light of Watson's overruling of the "reformulated factual-sufficiency standard of review introduced in Zuniga." Drichas v. State, 210 S.W.3d 644, 645 
(Tex. Crim. App. 2006). See Watson, 204 S.W.3d at 416-417; see also Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004), overruled by Watson, 204 S.W.3d 415-17.