Affirmed and Memorandum Opinion filed January 29, 2009








Affirmed and Memorandum Opinion filed January 29, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00946-CR

NO. 14-07-00947-CR

_______________

 

CHAUNCEY MIDDLETON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                      
         

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause Nos. 1115118, 1124756


                                                                                                                                   
            

 

M E M O R A N D U M   O P I N I O N








A jury
convicted appellant Chauncey Middleton of two counts of theft of services and
sentenced him to five years= incarceration for each count.  In his first and second
appellate issues, he contends that the trial court erred by refusing to include
his requested jury instruction on the lesser-included offense of misdemeanor
theft and denying his motion to quash the indictment.  In his third and fourth
issues, he challenges the factual sufficiency of the evidence to support his
conviction and claims a fatal variance exists between the indictment and
proof.  We affirm.

I.  Background

In
separate causes, appellant was indicted for two counts of the offense of theft
of services by deception or false token.[1] 
The causes were consolidated for a jury trial.

Diana
Mascarenhas, who worked at Front Office Business Center in Houston, testified
that in August 2006 appellant inquired about renting office space.  Mascarenhas
explained that Front Office Business Center leased furnished or unfurnished
office space to individuals or businesses and provided other services such as
phone, voicemail or technology packages and secretarial or word-processing
services.   According to Mascarenhas, appellant stated that he needed to rent a
furnished office quickly for his business, American Physicians Financial
Services, Inc.  Mascarenhas assisted appellant in selecting an open office
suite and furniture.  Based on his selection of services and furniture,
Mascarenhas provided appellant with an estimate of his monthly charges. 








Mascarenhas
further testified that appellant returned to Front Office Business Centers a
few days later, accompanied by an individual he introduced as Bobbie
Phillips.   Mascarenhas stated that, after she explained the rental agreement,
appellant instructed Phillips to complete various forms and sign the lease,
with monthly recurring charges for the office space and various other services
of $1,533.98.  Phillips signed the lease agreement and a credit application as
vice president of American Physicians Financial Services.  Mascarenhas
explained that Front Office Business Centers entered into a one-year lease for
office furniture on behalf of appellant, based on his representations to her. 
Mascarenhas stated that she informed appellant he had to pay $2,882.86 before
he could occupy the office space; appellant instructed Phillips to provide a
check for this amount.  The check appeared to be drawn on a Whitney National
Bank account in the name of MedTex Medical Billing Inc.  

According
to Mascarenhas, appellant occupied the office space for about three weeks, but
the check for $2,882.86 was returned unpaid by Whitney National Bank marked AUNABLE TO LOCATE ACCOUNT IN OUR
FILES.@[2]  Mascarenhas testified she was
unable to collect the funds from appellant, so she attempted to re-rent the
now-furnished office space.  After about two months, she found a new tenant. 
On cross-examination, she described Front Office Business Centers= typical collection process when a
tenant fails to make lease payments, but stated that process was not followed
in this case.  Mascarenhas reiterated that it was Bobbie Phillips who had
actually signed the rental agreement, but that appellant had occupied the
office space. 








Joanne
Deleon and Glenda Garza, employees of the Valencia Condominiums on Old Spanish
Trail in Houston, identified appellant as the individual who leased a condominium
at the Valencia in late September 2006.  According to Deleon, the condominiums
are offered for sale and lease to investors.  Appellant came to the condominium
office and told Deleon he was interested in leasing a unit immediately for his Aclients.@  Deleon showed him the only
available unit; appellant completed a lease application in the name of American
Physicians Financial Services, Inc. and signed a rental agreement for a twelve-month
lease.  Appellant provided a check for $3,225.00, which included rental charges
in lieu of a security deposit and pro-rated rent to the end of the month. 
According to both Deleon and Garza, appellant furnished and occupied the rental
unit.  Garza stated that although appellant informed her he was leasing the
unit for use by his clients, appellant himself moved in on the same day he
signed the lease agreement.

About
two weeks after appellant leased the condominium unit, the check he had
provided to the Valencia was returned dishonored by Woodforest Bank.[3] 
Although the face of the check indicated it was drawn on a business account in
the name of AAmerican Physicians Financial,@ Julia Diane Douglas, Senior Vice
President of Deposit Operations for Woodforest Bank, testified that the check
was actually drawn on appellant=s personal account.  According to Douglas, the total amount
deposited in appellant=s personal account was $870.00.  Further, she explained that
the type of check used to pay the Valencia Condominiums was not the kind typically
issued by the bank.  Finally, she testified that the signature on the checks
appeared to match the signature on file for appellant=s personal account.








Before
the case was submitted to the jury, appellant=s counsel asked the trial court to
include Texas Penal Code section 31.04(b) in the jury=s instructions.  This subsection
provides:

For
purposes of this section, intent to avoid payment is presumed if:

(1) the actor absconded without paying for the service or expressly
refused to pay for the service in circumstances where payment is ordinarily
made immediately upon rendering the service, as in hotels, campgrounds, recreational
vehicle parks, restaurants, and comparable establishments;

(2) the actor failed to make payment under a service agreement within
10 days after receiving notice demanding payment;

(3) the actor returns property held under a rental agreement after the
expiration of the rental agreement and fails to pay the applicable rental
charge for the property within 10 days after the date on which the actor
received notice demanding payment; or

(4) the actor failed to return the property held under a rental agreement
. . . within three days after receiving notice demanding return, if the
property is valued at $1,500 or more.

Tex.
Penal Code Ann. ' 31.04(b) (Vernon Supp. 2008).   During the charge
conference, the State argued as follows against the requested inclusion of this
language:

[W]e have pled this case under [Texas Penal Code
section] 31.04(a)(1).  The Defense is asking, under section 31.04(a) - - I=m sorry - - 31.04(b)(1), (2), (3), and (4), that all
the presumptions for intent to avoid payment be included in the charge.

. . .

Under
31.04, Section 4 - - 31.04(a)(4), if we had selected to plead it under that
paragraph, it requires failure of payment after receiving notice and demanding
payment; but we have not alleged it that way.  We have alleged it as secured
performance of the service by deception and false token.

The defendant is attempting to put in a presumption to avoid payment,
holding the State to a higher burden of proof and misleading this jury, saying
that if there is not notice, then there cannot be a criminal charge.  That is
improper.  That would be an improper charge and improper comment on the
evidence.  It does not track the statute in the pleadings for which the defendant
is charged . . . .








The defense responded
that Aonce they know that they haven=t gotten their money, they have to
give him notice and time to pay.@  The trial court denied appellant=s request to include this
instruction.  

Appellant
also sought an instruction on the lesser-included offense of misdemeanor theft
of services.  In response to the trial court=s inquiry regarding the evidence in
support of this requested instruction, appellant stated, ABecause he did not utilize that
property or service beyond a period of time that would be $1500 or more in each
situation.  There was questionable testimony about how long he actually
utilized the property.@  The trial court refused the requested instruction.

After
the charge conference, the State=s final witness, Doug Osterberg,
testified.  Osterberg stated that he is an investigator with the Harris County
District Attorney=s office, and he described appellant=s arrest in Alvin, Texas.  According
to Osterberg, appellant was driving a 2004 green Jaguar.  Inside the car,
officers found Amany pieces of paper, checkbooks, and many articles that we
recovered and brought down to our office.@  Osterberg described his actions in
developing and presenting a photo array including appellant=s photograph to several of the
witnesses in this case.  Osterberg also testified that Bobbie Phillips had been
arrested for an unspecified felony offense regarding his involvement with the
transaction with Front Office Business Centers. 

The jury
found appellant guilty as charged in the indictments.  At the close of the
punishment phase, the jury answered Atrue@ to two enhancement paragraphs and
assessed punishment at five years= confinement in the Texas Department
of Criminal Justice, Institutional Division, for each of the charged offenses,
with the sentences to be served consecutively.  The trial court rendered
judgment on the jury=s verdict.








II.  Issues Presented

In his
first issue, appellant contends his convictions in both causes should be
reversed because the trial court refused to charge the jury on the
lesser-included charge of misdemeanor theft.  Appellant asserts in his second
issue that the trial court=s refusal to quash the State=s indictments in both causes under
the doctrine of in para materia constitutes reversible error.  In his
third issue, appellant challenges the factual sufficiency of the evidence. 
Finally, appellant argues that a fatal variance exists between the indictment
and the proof in his fourth issue.

IV.  Analysis

A.        Lesser-Included Offense

A jury
charge on a lesser-included offense is warranted when (1) the offense is
actually a lesser-included offense of the charged offense, and (2) there is
some evidence in the record that would permit a rational jury to find the
defendant guilty only of the lesser offense.  Arnold v. State, 234
S.W.3d 664, 670B71 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  Neither party disputes
that misdemeanor theft of services is a lesser-included offense of felony theft
of services; the only difference between the two offenses is the value of the
services stolen.  Compare Tex.
Penal Code Ann. '' 31.04(e)(1), (2), (3) (Vernon Supp. 2008) (offense is a
Class A misdemeanor if value of stolen service is less than $1,500) with id.
' 31.04(e)(4) (offense is a state jail
felony if value of stolen service is $1,500 or more but less than $20,000).  We
therefore consider only whether the second prong of the test was met in this
case.  This requirement is satisfied if there is some evidence from which a
rational juror could find that the value of the stolen services was less than
$1,500.  








Value of
property or service in a theft case is the fair market value of the property or
service at the time and place of the offense.  See id. ' 31.08(a)(1) (Vernon 2003).  Such
value can be proven by evidence of the retail or sales price, by the testimony
of an owner=s opinion of value, or an expert opinion of value; however no single
method has been held to be conclusive.  See Keeton v. State, 803 S.W.2d
304, 305 (Tex. Crim. App. 1991) (en banc).

 Here,
Mascarenhas testified that to secure the office space with the options
appellant selected, appellant agreed to pay $2,882.86 before he could occupy
the space.  Likewise, Garza testified that to secure the condominium unit
appellant selected, appellant agreed to pay $3,225.00.  The jury was provided
copies of the fraudulent checks appellant presented to secure these services. 
For each count in the indictment, therefore, the value of the services
appellant stole was more than $1,500 and less than $20,000, which falls into
the value range for a state jail felony offense.  See Tex. Penal Code
Ann. ' 31.04(e)(4).   








Appellant=s argument ignores section
31.08(a)(1) of the Texas Penal Code, which unambiguously describes how value is
determined: the value of stolen services is equal to the fair market value of
the services Aat the time and place of the offense.@  Tex.
Penal Code Ann. ' 31.08(a)(1).  This figure was established at trial by
unrebutted evidence, including the testimony of witnesses, the leases, and the
amounts of the dishonored checks used to induce the complainants to render
their services.  Cf. Keeton, 803 S.W.2d at 306 (AA defendant is free to rebut a store
price as representative of fair market value by showing that such retail or
sale price was inflated by that store . . . .@); Jones v. State, 821 S.W.2d
234, 237 (Tex. App.CHouston [14th Dist.] 1991, pet. ref=d) (noting that, because the
appellant offered no evidence rebutting the owner=s testimony regarding the stolen item=s value, the jury could accept that
valuation in determining whether the stolen goods were valued at more than $750
but less than $20,000); Ketchum v. State, 707 S.W.2d 718, 719 (Tex. App.CTexarkana 1986, no pet.) (explaining
that testimony from an agent of a property owner or service provider as to
value is sufficient to establish fair market value); Salazar v. State,
711 S.W.2d 720, 723B24 (Tex. App.CCorpus Christi 1986, pet. ref=d) (value of merchandise subject of
theft charge was established as exceeding statutory minimum of $750 given
evidence that dishonored check was made out in the amount of $5,700, invoice
for the merchandise shipped to the defendant indicated a total value, less a
discount, of $5,171.71, and the owner placed a reasonable market value on the
merchandise of $5,443.90).  Contrary to appellant=s argument, Athe corrective action taken by the
two complaining witnesses@ is irrelevant; the value of each of the stolen services at
the time and place of the offense is readily ascertainable, and these services
are not rendered less valuable by the complainants= quick action in detecting,
reporting, or mitigating the effect of the thefts.

Because
there is no evidence in the record that would permit a rational jury to find
that the value of the stolen services was less than $1,500,  a charge on the
misdemeanor offense of theft of services was not warranted.  Cf. Arnold,
234 S.W.3d at 671.  We therefore overrule appellant=s first issue.[4]








B.        Motion to Quash Indictment[5]

A trial
court=s ruling on a motion to quash an
indictment is subject to de novo review.  State v. Moff, 154 S.W.3d 599,
601 (Tex. Crim. App. 2004).  An accused has a right to receive notice of the
charges against him; thus, a charging instrument must notify the accused of the
nature of the accusation against him with sufficient specificity to allow him
to prepare a defense.  See U.S.
Const. amend. VI; Tex. Const.
art. 1, ' 10; Moff, 154 S.W.3d at 601;
Kindley v. State, 879 S.W.2d 261, 263 (Tex. App.CHouston [14th Dist.] 1994, no pet.).








Here,
appellant was charged with theft of service under subsection (a)(1) of Texas
Penal Code section 31.04, which provides: AA person commits theft of service, if
with intent to avoid payment for service that he knows is provided only for
compensation . . . [,] he intentionally or knowingly secures performance of the
service by deception, threat, or false token[.]@  Tex.
Penal Code Ann. ' 31.04(a)(1).  Here, the trial court defined Afalse token@ in the jury charge as follows:A>False token= is a thing or object or document
which is used as a means to defraud and which is of such character that, were
it not false, it would commonly be accepted as what it obviously appears and
purports to be.@  Appellant does not dispute this definition, and he does not
deny that the checks in question fall within this definition. Instead,
appellant asserts that he should have been charged with theft of services under
subsection (a)(4), which provides that a person commits theft of service if Ahe intentionally or knowingly secures
the performance by agreeing to provide compensation and, after the service is
rendered, fails to make payment after receiving notice demanding payment.@  Id. ' 31.04(a)(4).  He asserts that the
State, by charging him under subsection (a)(1) rather than subsection (a)(4),
violated the doctrine of in pari materia.[6]

Even
assuming the applicability of this doctrine to this case,[7]
subsection (a)(1) is the more specific statute applicable to the offenses
alleged.  In contrast to the circumstances described in subsection (a)(4),
appellant did not agree to provide compensation after the services were
rendered.  Instead, he provided Apayment@ in advance using a Afalse token@ for the secured services, just as
described in subsection (a)(1). Appellant=s use of these forged, fraudulent
checks also constitutes deception as defined by the Texas Penal Code. See Tex. Penal Code Ann. ' 31.01(a)(A) (A>Deception= means . . . creating or confirming
by words or conduct a false impression of law or fact that is likely to affect
the judgment of another in the transaction, and that the actor does not believe
to be true . . . .@).

Because
we conclude that the the trial court did not err in denying appellant=s motion to quash, we overrule
appellant=s second issue.








C.        Sufficiency
of the Evidence

1.         Factual
Sufficiency

In his
third issue, appellant challenges the factual sufficiency of the evidence to
support his conviction.  When reviewing the factual sufficiency of the
evidence, we view all the evidence in a neutral light and set aside the verdict
Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we must avoid intruding on the
factfinder=s role as the sole judge of the weight and credibility of the witness
testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (en
banc).  We do not re‑evaluate the credibility of witnesses or the weight
of evidence, and we will not substitute our judgment for that of the factfinder. 
Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). 

Appellant
asserts that the evidence is factually insufficient because:  (1) the State
failed to prove the elements of fraud and false token; (2) there was
insufficient evidence of value because the opinion testimony of a complainant
alone cannot establish value; and (3) the State failed to show the lies
essential for a fraud case[8] or the false
tokens offered in exchange for the services.








The
State established that the checks offered by appellant in exchange for the
services he secured were fraudulent.  As detailed above, the check appellant
provided to Front Office Business Centers appeared to be drawn on a Whitney
National Bank account in the name of MedTex Medical Billing Inc.  But this
account had been closed for several years, and appellant had been notified that
the account was closed.  The check appellant provided to the Valencia
Condominiums was purportedly drawn on a business account in the name of
Physician Financial Services, Inc.  The account number, however, was actually
associated with appellant=s personal account, which contained insufficient funds to
cover the check.  The jury was provided copies of these checks, along with bank
records and testimony from bank employees regarding the status of the
accounts.  Thus, these checks sufficed to establish the Afalse token@ allegation.  By presenting these
false tokens to the complaining witnesses, appellant Acreat[ed] or confirm[ed] a false
impression of law or fact that [was] likely to affect the judgment of another
in the transaction[s.]@ See Tex. Penal
Code Ann. ' 31.01(1) (defining Adeception@).  Finally, as discussed supra,
the value of the stolen services at the time and place of the offenses was
established by unrebutted evidence.  See id. ' 31.08(a)(1). 

After
viewing all the evidence in a neutral light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  We
therefore overrule appellant=s third issue.

2.         Variance

In his
fourth issue, appellant asserts that the State, by alleging that he attempted
to steal services by Afraud and false token@ and attempting to prove that he was
guilty of Atheft by check,@ created a fatal variance between the charging instrument and
the proof offered at trial.  Thus, he contends the evidence is insufficient to
support his conviction. 








In cases
involving a sufficiency claim based on a variance between the indictment and
the evidence, we consider the materiality of the variance.  Fuller v. State,
73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (en banc); Rogers v. State,
200 S.W.3d 233, 236 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).   A variance is fatal, i.e.,
renders the evidence insufficient, only when it is material.  Fuller, 73
S.W.3d at 253; Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App.
2001); Rogers, 200 S.W.3d at 236.  AA variance is material if it (1)
deprived the defendant of sufficient notice of the charges against him such
that he could not prepare an adequate defense, or (2) would subject him to the
risk of being prosecuted twice for the same offense.@  Rogers, 200 S.W.3d at 236
(citing Fuller, 73 S.W.3d at 253; Gollihar, 46 S.W.3d at 257). 
The burden of demonstrating the materiality of a variance rests with the
defendant.  Id. (citing Santana v. State, 59 S.W.3d 187, 194B95 (Tex. Crim. App. 2001)).  

Appellant
asserts his sufficiency argument as follows:

The State failed to establish two things, and these two things are the
key root of its failure.  First it failed utterly to establish what they [sic]
alleged, although one could argue they made a fair go at attempting to
prove theft by check under [s]ub-section [(a)]4 of Artile 31.04.

However, since the State alleged that the [a]ppellant offered to steal
services by fraud[[9]] and false
token, and then set out proving (or rather attempting to prove, as will be
shown) theft by check not honored after demand for payment, they created a
fatal variance between their own charging instrument and the proof offered at
trial.  Since they had a chance to change their pleadings after the defense
[m]otion to [q]uash placed them on notice, but instead chose to forge boldly
ahead on an allegation that could not possibly match the evidence, they have
only themselves to blame.

Last, the State=s case also fails, having offered to prove fraud and
having tried instead to prove theft by check, they completely failed to provide
proper notice was received by the [a]ppellant of demand for payment.  In fact,
one of their witnesses testified that she could not confirm the delivery [] of
demand at all.

As discussed more
thoroughly supra, however, the State properly charged appellant with
theft of services under Texas Penal Code subsection 31.04(a)(1).  Further, for
the same reasons the evidence is factually sufficient, the evidence is likewise
legally sufficient.  We therefore conclude that there is no variance, material
or otherwise, between the allegations and the proof and overrule appellant=s fourth and final issue.








IV.  Conclusion

In sum, because no record evidence supported the submission
of a jury instruction or charge on the lesser-included offense of misdemeanor
theft, the trial court properly denied appellant=s request for inclusion of such
language in the jury charge.  The trial court also properly denied appellant=s motion to quash the indictments. 
Additionally, the evidence is both legally and factually sufficient to sustain
appellant=s conviction, and there is no variance between the allegations and proof
in this case.  Accordingly, we overrule appellant=s four issues and affirm the trial
court=s judgment.

 

 

 

/s/        Eva M. Guzman

Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Guzman and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  In cause number 111518, the State alleged that
appellant

on or about
AUGUST 18, 2006, did then and unlawfully, intentionally and knowingly by
deception and false token secure performance of service, namely, RENTAL OFFICE
SPACE, provided by DIANA MASCARENHAS, hereafter styled the Complainant, of the
value of over one thousand five hundred dollars and under twenty thousand
dollars, intending to avoid payment for the service and knowing that the
service is provided by the Complainant only for compensation.

 In cause number 1124756, the State alleged that
appellant 

on or about
SEPTEMBER 18, 2006, did then and there unlawfully, intentionally and knowingly
by deception and false token secure performance of service, namely, RENTAL
PROPERTY, provided by GLENDA GARZA, hereafter styled the Complainant, of the
value of over one thousand five hundred dollars and under twenty thousand
dollars, intending to avoid payment for the service and knowing that the
service is provided by the Complainant only for compensation.

 





[2]  Two employees of Whitney National Bank, vice
president and branch manager Susan Dietz and assistant branch manager Linda
Monera, testified that appellant had opened a business bank account in December
2004 for MedTex Medical Billing, Inc.  Whitney National Bank closed the account
a few days later when it learned that the secretary of state had dissolved the
corporation.  Dietz testified that she immediately informed appellant by
telephone that the account had been closed and that his initial deposit of $200
would be refunded to him.  According to Dietz, the account was closed in 2004
and never reactivated.  The account number on the check provided to Front
Office Business Services matched the account number assigned to this defunct
business account.





[3]  Deleon testified that she posted a Anotice to vacate@ on
the door of the unit when appellant=s
check was returned for insufficient funds. She explained that neither she nor
other personnel from the Valencia contacted police about the dishonored check,
but about a week after appellant moved in, police officers came to the
condominium office with a warrant to search appellant=s unit.





[4]  Additionally, this issue is inadequately briefed.  See
Tex. R. App. P. 38.1. The
entirety of appellant=s analysis of this issue is as follows:

A theft is a theft, but how much of a theft is a fact question
for the jury.  It was their province to determine whether or not a theft, if
any had occurred, occurred in an amount sufficient to invoke the trial court=s felony jurisdiction and to punish the matter as a
felony.

Value is always a contested issue.  As an interesting example to
illustrate the point, what does a seat on a major airline cost?  If one used a
credit card or cash to purchase a fare, is it the 21 day advance purchase
discount?  The discount for a frequent flyer?  The last minute purchase?  The
special sale price for a promotion online?  No one really knows what the seats
cost, and grown economists and accountants weep trying to determine it.  

Likewise the value of the claimed loss in these cases, in both causes,
as opposed to the actual loss shown via testimony and the corrective action
taken by the two complaining witnesses, could vary from a pro-rated amount of
the monthly rent for the time actually occupied, to the full month=s rent, to the possible loss of rent if a property was
deemed not leaseable for more than [a] month.  All of these require proof and
determination by a competent fact-finder, in this case the jury.  The elements
other than value are all the same, from beginning to end, and since the State
raised the issue of value via their witnesses= testimony, it is up to the jury to believe or disbelieve one or all of
their witnesses, or all or part of their testimony.  The difference is the
difference between a misdemeanor sentence and a felony prison term.  The harm
here is apparent, and the denial of a requested charge in this matter was
harmful, reversible error.  The [a]ppellant asks this Honorable Court reverse
and remand this case for a new trial in the court below, or to reform the
judgment to reflect only a misdemeanor conviction.

There are no record citations in this portion of his
argument, nor has appellant provided record citations regarding the facts
surrounding this issue in his Statement of Facts.  Further, although he recites
the appropriate standard of review for jury charge error, he provides no
authority for any of the arguments asserted in the analysis section.  Thus,
this issue presents nothing for our review.  See Busby v. State, 253
S.W.3d 661, 573 (Tex. Crim. App. 2008) (AThis
Court has no obligation to construct and compose appellant=s issues, facts, and arguments >with appropriate citations to authorities and to the
record.=@ (quoting Tex.
R. App. P. 38.1(h))) .





[5]  Appellant also filed a motion in arrest of judgment,
which is essentially a post-trial motion to quash the indictment.  Crittendon
v. State, 923 S.W.2d 632, 634 (Tex. App.CHouston
[1st Dist.] 1995, no pet.).





[6]  This doctrine is a rule of statutory construction
for determining which provision controls when a general statutory provision and
a more specific statutory provision deal with the same subject matter but
irreconcilably conflict. Ex parte Smith, 185 S.W.3d 887, 889 n.5 (Tex.
2006).  Texas has codified this doctrine in section 311.026 of the Government
Code:  

(a) If a
general provision conflicts with a special or local provision, the provisions
shall be construed, if possible, so that effect is given to both.  (b) If the
conflict between the general provision and the special or local provision is
irreconcilable, the special or local provision prevails as an exception to the
general provision, unless the general provision is the later enactment and the
manifest intent is that the general provision prevail.  

Tex. Gov=t
Code Ann. ' 311.026 (Vernon 2005).





[7]  Sections 31.04(a)(1) and (a)(4) provide discrete
manners in which the offense of theft of services may be committed; they do not
address the same deceptive acts.  See Tex.
Penal Code Ann. '' 31.04(a)(1), (a)(4).  Thus, subsection (a)(1) is not
a more general statutory provision than subsection (a)(4); they are both
equally specific.  Cf. Smith, 185 S.W.3d at 889 n. 5.  Furthermore, the
two subsections do not conflict.  Cf. id.  Thus, these subsections do
not appear to be subject to the doctrine of in pari materia.





[8]  Throughout his briefing, appellant references  the
State=s allegation of Afraud.@  But neither the indictment nor the jury charge refer
to Afraud.@  Instead,
appellant=s conviction rests on false token or deception.  Thus,
appellant=s contention that the State failed to prove the
element of Afraud@ is without
merit.





[9]  See note 8, supra.