**Larry Keene KEETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1167–89.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 6, 1991.

John D. Nation, Dallas, for appellant.

John Vance, Dist. Atty., and Carolyn Fitz–Gerald Levin and Colleen Doolin, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

After a trial before the court, appellant was convicted of theft of property of the value of $750.00 or more but less than $20,000.00. The court found the enhancement paragraph to be true and assessed

punishment at confinement for twenty years. The court of appeals affirmed the conviction. *Keeton v. State*, 774 S.W.2d 716 (Tex.App.—El Paso 1989). We granted appellant's petition for discretionary review to determine whether the evidence concerning the fair market value of the items taken was sufficient to prove the value alleged in the indictment.

The evidence showed that appellant took two boxed Smith–Corona typewriters from the Montgomery Ward store in North Town Mall in Dallas without paying for them. Valeta Gart, the manager of the store, testified that buyers in Chicago for Montgomery Ward determined that $479.99 was a fair market price for each typewriter, making the total value for the two that appellant took over the alleged minimum of $750.00. The parties stipulated that on the day appellant took the typewriters, the typewriters were on sale for $359.99 each at this Montgomery Ward store. The total value for the two typewriters selling at this price is under the $750.00 level required for a felony and would make the offense a Class A misdemeanor.

The court of appeals held that these facts presented conflicting evidence of value and the trial court, as trier of fact, could choose which value it believed represented fair market value. The trial court obviously chose to rely upon the higher price.

Appellant relies upon V.T.C.A. Penal Code, § 31.08(a)(1), which defines value as "the fair market value of the property or service at the time and place of the offense." Appellant argues that this means value is *only* the selling price of the property on the day of the offense at the particular store from which the property was taken.

■ The interpretation of "fair market value" and the interpretation of "time and place of the offense" do not support appellant's contention. First, while fair market value is not statutorily defined, it has long been stated as the amount the property would sell for in cash, giving a *reasonable time* for selling it. *Senters v. State*, 163 Tex.Crim. 423, 291 S.W.2d 739 (1956). This definition supports the idea that a sale price may be, but is not necessarily determinative of the fair market value because of the "reasonable time" criteria. A sale may be of such short duration that it may not be a "reasonable time" within which to sell an item. In fact, the sale price might be ridiculously low simply to attract customers to the store and sell the item immediately and not within a reasonable time. Therefore, while the sale price may be some evidence of fair market value, it is certainly not the *only* evidence, given the reasonable time criteria of fair market value.

■ Next, we address appellant's contention that the "time and place" aspect of value under § 31.08(a)(1) limits proof of value to the day of the offense and the particular store from which the property was taken. The definition of value in § 31.08(a)(1) is a codification of the standard long established by case law. *Cunningham v. State*, 90 Tex.Crim. 500, 236 S.W. 89 (1921); *Childress v. State*, 92 Tex. Crim. 215, 241 S.W. 1029 (1922); *Larkin v. State*, 157 Tex.Crim. 284, 248 S.W.2d 134 (1952); V.T.C.A. Penal Code, § 31.08, Practice Commentary; see also *Sullivan v. State*, 701 S.W.2d 905 (Tex.Cr.App.1986). Methods of proving fair market value have varied from showing retail price or sale price, see *Speights v. State*, 499 S.W.2d 119 (Tex.Cr.App.1973), to admitting testimony of an owner's opinion of value, to a non-owner's, "expert" opinion of value. See *Sullivan*, supra. No one method has ever been held to be exclusive. Use of various methods to show fair market value is certainly due to the necessity for flexibility because of the various circumstances of theft that arise.

In terms of proving fair market value at the place of the offense, the *place* of the offense has been the actual location of the theft, i.e., the price at the particular store from which an item was stolen, *Speights*, as well as the more general locale in which the offense occurred, i.e., the price that the property would sell for in the county of the offense. *Saddler v. State*, 20 Tex.App. 195 (1886); *Clark v. State*, 23 Tex.App. 612, 5 S.W. 178 (1887); *Lamb v. State*, 133 Tex.

Crim. 97, 108 S.W.2d 1112 (1937); *Darty v. State*, 149 Tex.Crim. 256, 193 S.W.2d 195 (1946); *Larkin*, supra. Most of these cases involved theft of property from a private owner who had originally bought the property, in contrast to theft of property taken directly from a store such as Montgomery Ward. *Clark*, supra, (an overcoat); *Darty*, supra, (a leather belt); *Lamb*, supra, (a harness and saws). But, these cases do not suggest that just because the owner is a store as opposed to an individual private owner, the price asked at other places in the county of the offense cannot be used to determine fair market value. They are simply different ways of proving the value in the market place.

■ In the instant case, appellant would have us restrict the fair market value to the price set at Montgomery Ward on the day of the offense. While this is certainly one method of proving fair market value, it is not the only one. A defendant is free to rebut a store price as representative of fair market value by showing that such retail or sale price was inflated by that store as evidenced by the price of the item at the same kind of stores in the general locale, whether that be the same town or the county. Likewise, the State may present evidence showing the price charged at other stores, and argue that the sale price was low and did not reflect fair market value in the county. The trier of fact is presented with differing values shown from different sources or "markets" from which it must decide which value represents the fair market value of the item.

■ Appellant also contends that there was no conflicting evidence of value because Gart testified only that the buyers set the "book price" of $479.99 and that Gart did not testify that that was the fair market value. Therefore, fair market value being the "amount of money the property in question would sell for in cash, giving a reasonable time for selling it," *Senters*, supra, the sale price was the only evidence of a cash price.

The court of appeals was correct in stating that *two conflicting values* were presented. Gart testified that the store's buyers determined that $479.99 was a fair market price for the typewriter and that that was the price for which the typewriter would be sold. She admitted that she did not know at what price other stores sold the typewriter. The parties also stipulated that the typewriters were on sale for $359.99 the day of the offense. This evidence shows that the usual selling price at Montgomery Ward was $479.99 and the sale price that day was $359.99. The trier of fact was presented with two values to decide between in determining the fair market value. The court chose the normal retail price, not the lower sale price.

In the instant case, the trier of fact was presented with two values of the typewriters at the time and place of the offense. The trier of fact resolved this conflict in favor of the higher value. The court of appeals correctly found the evidence sufficient to support the conviction.

The judgment of the court of appeals affirming the conviction is affirmed.

TEAGUE, J., concurs in result.

CLINTON, Judge, concurring.

The essence of any general definition of "fair market value" is the "willing-seller willing-buyer" concept; that is, "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex.1972); *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808, 815 (1954); *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 202 (Comm.App.1936); Black's Law Dictionary (Rev. Fourth Ed.1968) 716.

At common law when used in cases of theft:

"The word 'value' is ... slightly variable in meaning; but, ordinarily, for the purposes of this inquiry, it signifies the sum at which the like goods are, at the time, commonly bought and sold in the market. * * * * Any evidence from which the jury can infer the value of a stolen chattel is competent; as what the

owner testifies of its value to him, the opinions of witnesses acquainted with the value of like property, what such property has brought at actual sales, etc."

2 Bish.Crim.Prac. § 751, quoted and applied in *Martinez v. The State*, 16 Tex.App. 122 (1884).

The majority derives from *Senters v. State*, 163 Tex.Cr.R. 423, 291 S.W.2d 739 (1956), that market value of stolen personal property is the amount it "would sell for in cash, *giving a reasonable time for selling it*," the Court citing only *Saddler v. State*, 20 Tex.App. 195 (1886), and Branch's Ann. P.C. § 2489. *Id.*, 291 S.W.2d at 740. However, *Saddler* merely finds "no error" in the charge as given on the strength of language in *Martinez v. The State*, supra, at 128, which makes no mention of "reasonable time," cf. *ante*; while Mr. Branch iterated that thought, the cases he refers to do not hold there is a "reasonable time" ingredient either, *viz: Saddler*, supra; *Keipp v. State*, 51 Tex.Cr.R. 417, 103 S.W. 392 (1907); *Williams v. State*, 63 Tex.Cr.R. 507, 140 S.W. 447 (1911); neither do subsequent decisions cited in 5 Branch's (2d Ed. 1956), § 2676, at 124.[1]

The majority grievously errs in constructing from abstractions and speculation a literal "reasonable time criteria [sic]." At 305. In all the years since *Saddler*, and after Mr. Branch first reported that notion, this Court has not overtly used or included it in any analysis to determine fair market value in theft cases, and even though *Senters* was decided in 1956, the Court has never squarely addressed its headnote 2. See Shepard's Texas Citations. Some courts of appeals have mentioned *Senters*, but none focuses on its "reasonable time" aspect. See, e.g., *Scott v. State*, 712 S.W.2d 782 (Tex.App.—Houston [1st] 1986), affirmed *Scott v. State*, 741 S.W.2d 435 (Tex.Cr.App.1987); *Hall v.*

*State*, 730 S.W.2d 7 (Tex.App.—San Antonio 1987), PDR refused; *Hilson v. State*, 751 S.W.2d 279 (Tex.App.—Houston [1st] 1988), no PDR history.

Moreover, while the majority recognizes that the legislative definition of "value" in § 31.08(a)(1) is "a standard long established by case law," at 305, it is significant that the Legislature has not included any such "reasonable time" formulation.

Under these circumstances, to suggest that there must be a "reasonable time" inquiry in determining "fair market value" for purposes of fixing punishment for a general theft offense is not reasonably supportable.

Furthermore, where a merchant is offering merchandise for sale at retail there is no principled basis to introduce any such "reasonable time" factor. Certainly not in this context.

The indictment alleged the two typewriters were "of the value of at least $750," and the factfinder is given to understand that "value" means "the fair market value of the property ... at the time and place of the offense." Article 31.08(a)(1); see McCormick & Blackwell, *Texas Criminal Forms and Trial Manual*, § 101.01, 8 Texas Practice 539.

Valeta Gart, southwest territorial manager, personnel manager for Montgomery Ward & Co., testified that on the day and at the place of this offense she was working as store manager, that she was aware of the value of the typewriters in question, that the fair market value of each in Dallas County was $479.99 and the fact they may have been on sale that day did not have "anything to do with that value." (SF 24–26). That value, she iterated on cross examination, was established by "our buyers" in the Chicago office "when they order it;" agreeing it is the value assigned "for

---

**1.** For the Court, Judge Woodley undoubtedly used the *Saddler* "reasonable time" cite to fortify evidentiary observations that market value is not determined by what "an eager buyer would be willing to pay" or what "a seller who obtained it as an unredeemed pledge might be willing to take ... were he anxious or under necessity to sell." *Senters*, supra, 291 S.W.2d at 740. The Court thus believed, as I do, that a "willing-seller willing-buyer" concept presupposes "reasonable time for selling" lapsed, or at least is taken into consideration by the respective parties.

accounting and inventory purposes," she still adhered to her opinion:

Q. If that property was on sale on that day, would that change your opinion as to what the fair market value was of those typewriters?

A. I'm not sure how you define fair market value. $479,99 is the ·price that the buyers determine is a fair market price for that merchandise.

*Id.*, at 26–29

On redirect Gart further explained a company policy that if a customer brought in an advertisement that a certain item is being sold at a lower price the store manager may lower the price to that customer. However, she added: "I do not recall ever giving any money back to a customer on a Smith Corona typewriter because it's been advertised at a lower price." (*Id.*, 29).

After Gart was excused the parties stipulated that if recalled she would testify on the day of the offense the "on-sale" price of each typewriter was $359.99. Other than the fact that the date was December 14, the record does not show any circumstances relative to the change in price.

The factfinder, here the trial court, would be authorized to convict upon finding them to be of the value alleged, but be obliged to acquit if it had a reasonable doubt as to whether the property in question is of the value of $750 or more. McCormick & Blackwell, *Texas Criminal Forms and Trial Manual § 101.01*, 8 Texas Practice 542.[2]

Thus, as this case demonstrates, a retailer prices an item at an amount believed to be fair market value, and retail sales made at that price evinces that it is indeed a fair market value. That subsequently the same retailer tentatively places the same item on sale at a lower price does not *ipso facto* reduce its fair market value. See *Oliver v.*

*State*, 613 S.W.2d 270, 274–275 (Tex.Cr. App.1981).

For those reasons—without any regard to or consideration of so called "reasonable time criteria"—I concur in the judgment of the Court.

MILLER and MALONEY, JJ., join.

---

**2.** In rendering judgment for the trial court, the judge made oral findings on this point, *viz:*

"Common rule of commerce that though often price coincidentally matches that of value on numerous occasions, one in the ordinary course of legitimate business can purchase an item retailed at less than the true market value of the product. I find that to be the case here. I find that the State has satisfied its burden of proof with regard to the value [and] I find [the evidence] sufficient to show that the value of the items in question exceeded the statutory basement of $750.00. Mr. Keeton, I find you guilty as charged."