COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-106-CR

 

 

 

COREY ODELL SMITH                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

------------

 

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

------------

 

MEMORANDUM
OPINION[1]

 

------------

I.  Introduction

Appellant Corey Odell Smith
appeals his conviction for theft of property with a value of between $1,500 and
$20,000.  In one point, Smith contends
that the evidence is factually insufficient to support the jury=s verdict because the State did not prove beyond a reasonable doubt
that the value of the stolen property was between $1,500 and $20,000.  We will affirm.








II.  Pertinent Factual Background[2]

On October 9, 2006, Smith and
an accomplice stole the outside air conditioning unit from a house that was on
the market for sale and, thus, vacant. 
Angelica Mason, who owned the house with her husband, John Mason,
testified that she and Mr. Mason spent $2,500 for the equipment on the original
2004 installation of the air conditioning unit. 
She further testified that they paid $1,800 to purchase a unit to
replace the one stolen by Smith.        Mr.
Mason testified that he is in the air conditioning business and is certified in
air conditioning system installations. 
He testified that he previously worked as a serviceman for Trane, which
is a company specializing in the installation and servicing of air conditioning
and heating systems.  Mr. Mason said that
in 2004 he had purchased all of the equipment and materials for the original
system and that he had installed the system himself.  Mr. Mason further testified that the
equipment plus the necessary installation materials had cost $4,000.








Mr. Mason explained that the
unit stolen by Smith in October 2006 had become obsolete because of federal
laws passed in 2005, which required air conditioning units to have a higher
minimum energy efficiency rating.  The
2004 unit=s rating was
below federal law requirements, and the unit therefore did not have any resale
value in 2006, because federal law prohibited the installation of such a system
in a house in 2006. 

Mr. Mason testified that,
because the exact unit stolen by Smith in 2004 was no longer being
manufactured, he replaced the stolen unit with a new unit of comparable style,
value, and strength; the only difference between the new unit and the stolen
unit was the new unit=s energy
rating.  Mr. Mason testified that he paid
$1,800 for the replacement unit.  The
sales receipt for the replacement unit showing a cost of $1,800 and copies of
the Masons= check for
$1,800 cashed by an air conditioning equipment sales company were admitted into
evidence.  

Roger Hardcopf testified that
he sold Mr. Mason the replacement unit in October 2006.  Mr. Hardcopf had over twenty years of
experience in the air conditioning and heating systems business and not only
worked for Trane as a project costs estimator but also was certified in
multiple areas of air conditioning system installation.  Although Mr. Hardcopf reiterated Mr. Mason=s testimony that the 2004 unit had become obsolete because of the
federal laws passed in 2005 and that it therefore did not have a market value,
he also testified as follows: 








[State]:      Now,
let me ask you specifically about the old unit or the stolen unit that was the
XE1200 [the unit that Mr. Mason installed in 2004].

 

[Mr. Hardcopf]:    Yes,
sir.

 

[State]:      There
-- if one was manufactured or sold in 2003, late 2003 or early 2004, and if I
wanted to purchase that unit in October of 2006, what would the value of that
unit be?

 

[Mr. Hardcopf]:    It
would run around -- about 1,600.

 

. . . .

 

[State]:      .
. .  It would run about how much,
$1,600?  And that=s --
that=s if
I wanted to buy that used unit, right?

 

[Mr. Hardcopf]:    Yes.

 

Steven Mohon testified for
the defense.  Mr. Mohon also worked as a
salesman for Trane, but in a different area than any of the other witnessesChe worked in inside sales, which is a branch that sells units directly
to dealers.  Mr. Mohon testified that in
2004 a dealer could have purchased the same model that Mr. Mason had installed
in his house (the one stolen by Smith) for between $999 and $1,410.  Mr. Mohon further stated that a Trane
employee, such as Mr. Mason, could have purchased the unit in 2004 for less
than the $999 to $1,410 dealer cost.  Mr.
Mohon admitted that dealers mark up the cost of the units in order to make a
profit. 








The court=s charge at the guilt-innocence stage instructed the jury to find
Smith guilty if jurors determined beyond a reasonable doubt that Smith Adid unlawfully appropriate by acquiring or otherwise exercising
control over property, to wit: an air conditioning unit of the value of $1,500
or more, but less than $20,000, with the intent to deprive the owner, Angelica
Mason, of the property.@  The charge defined Avalue@ as meaning Athe fair market value of the property at the time and place of the
offense; or if the fair market value cannot be ascertained, the cost of
replacing the property within a reasonable time after the theft.@  See Tex. Penal Code Ann. '' 31.03(a), .03(e)(4)(A), .08(a) (Vernon 2003).  The trial court also submitted the lesser
included offense of theft of the value of $500 or more but less than
$1,500.  The jury found Smith guilty of
theft of property with a value of between $1,500 and $20,000.   This appeal followed.

III.  Factual Sufficiency of the Evidence

In his sole point, Smith
alleges that the evidence is factually insufficient to prove the value of the
stolen air conditioning unit in October 2006, specifically, to prove that its
value was $1,500 or more. 

A.     Standard of Review








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient,[3]
is nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust. 
Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  To
reverse under the second ground, we must determine, with some objective basis
in the record, that the great weight and preponderance of all the evidence,
though legally sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s determinations,
Aparticularly those determinations concerning the weight and
credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which ground.  Goodman v. State, 66 S.W.3d 283, 287
(Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.

B.     Determining Value








The Texas Penal Code, in
pertinent part, defines value in theft prosecutions as A(1) the fair market value of the property or service at the time and
place of the offense; or (2) if the fair market value of the property cannot be
ascertained, the cost of replacing the property within a reasonable time after
the theft.@  Tex.
Penal Code Ann. ' 31.08(a)
(Vernon 2003).

While fair market value is
not statutorily defined, case law defines the term as the amount the property
would sell for in cash, given a reasonable time for selling it.  Keeton v. State, 803 S.W.2d 304, 305
(Tex. Crim. App. 1991); Valdez v. State, 116 S.W.3d 94, 98 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).

At trial, every witness with
any experience in the air conditioner installation business testified that the
system installed in 2004 was, by federal law passed in 2005, obsolete by
2006.  Furthermore, all these witnesses
agreed that used air conditioning units were not sold or installed in the
normal practice of the profession. 

But one of the State=s witness, Mr. Hardcopf, did testify that a used unit of the stolen
unit=s make and model would sell for approximately $1,600 in October
2006.  And one of Smith=s witnesses, Mr. Mohon, testified that a Trane employee like Mr. Mason
could have bought the stolen system in 2004 for $999 to $1041 and that the unit
would have depreciated in value since that time. 








The testimony of Mr.
Hardcopf, who possessed decades of experience, training, and education in the
air conditioning industry, that in October 2006 the stolen unit was worth
$1,600 is not so weak that the jury=s value determination (of more than $1,500 but less than $20,000) is
clearly wrong.  See Watson, 204
S.W.3d at 414-15, 417; Sullivan v. State, 701 S.W.2d 905, 909 (Tex.
Crim. App. 1986) (establishing that a non-owner may testify as to the fair
market value of property as long as the non-owner is qualified to speak to the
value of the property).  Furthermore, the
conflicting value testimony presented by Smith=s witness, Mr. Mohon, does not so greatly outweigh the evidence
supporting the jury=s value
determination that the verdict is manifestly unjust.  See Watson, 204 S.W.3d at 414-15, 417;
Keeton, 803 S.W.2d at 306 (holding that where the trier of fact was
presented with two values for the stolen propertyCa price for the property when it was on sale and its normal selling
priceCthe evidence was sufficient to support the jury=s verdict, which was based on the higher value); Valdez, 116
S.W.3d at 99 (holding that the evidence was legally and factually sufficient to
support the verdict when the jury was presented with conflicting evidence about
the fair market value of the stolen property).








Finally, even if the
testimony outlined above were factually insufficient to establish the fair
market value of the stolen unit under penal code section 31.08(a)(1) at the
time it was stolen in October 2006, every witness with experience in the air
conditioner installation industry (including Smith=s own witness) testified that the stolen unit had become obsolete
because of a 2005 change in government energy regulations.  This testimony is sufficient to permit the
jury to conclude under penal code section 31.08(a)(2) that the fair market
value of the stolen unit in October 2006 could not be reasonably
ascertained.  Cf. Phillips v. State,
672 S.W.2d 885, 887 (Tex. App.CDallas 1984, no writ.) (holding that where the State did not present
any evidence about why the fair market value of the property was
unascertainable, but instead presented only evidence of the replacement costs,
the evidence was not factually sufficient to support the verdict).  Thus, the jury could have considered the cost
to the Masons of replacing the unit.  See
Tex. Penal Code Ann. ' 31.08(a)(2).  The Masons= evidence at trial established the replacement cost was $1,800.  Therefore, assuming that the testimony was
factually insufficient to establish the fair market value of the stolen
property, we hold that the evidence was nevertheless factually sufficient to
establish that the fair market value was unascertainable and that the
replacement cost was $1,800.  See
Watson, 204 S.W.3d at 414-15. 
Accordingly, we overrule Smith=s sole point.

IV.  Conclusion

Having overruled Smith=s sole point, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    WALKER, DAUPHINOT,
and HOLMAN, JJ.

DO NOT PUBLISH








Tex. R. App. P. 47.2(b)

DELIVERED: February 21, 2008











[1]See Tex. R. App. P. 47.4.





[2]Smith
limits his factual sufficiency challenge to the Avalue@
element of the offense of theft of $1,500-$20,000.  Accordingly, we restrict our recitation of
the facts to those involving value. 





[3]Smith
does not challenge the legal sufficiency of the evidence.