# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**NO. 03-07-00554-CV**

**In the Matter of O. A. G.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-25,101, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

**M E M O R A N D U M   O P I N I O N**

The juvenile court placed O.A.G. on probation for nine months in his mother's custody after finding that he engaged in delinquent conduct by committing two class B misdemeanor thefts. *See* Tex. Fam. Code Ann. § 51.03 (West 2008); Tex. Penal Code Ann. § 31.03 (West Supp. 2008). O.A.G. contends that the evidence is legally and factually insufficient to support the delinquency findings. We will sustain this contention as to one of the findings, but not the other. O.A.G. also contends that the juvenile court's restitution order is not supported by the evidence, and the State concedes the error. The State also concedes that the juvenile court's judgment contains other errors that should be corrected.

On the afternoon of January 6, 2007, several Austin police officers responded to a report of a vehicle burglary in progress at an apartment complex. The officers found four young men, one of whom was O.A.G., standing or kneeling beside two automobiles parked side-by-side in the complex parking lot. Both cars were 1995 Honda Accords, one maroon, the other tan. The

ignitions of both cars had been "punched," that is, the steering columns had been broken and the ignitions hot-wired to allow the cars to be started and driven without keys. The officers found meat thermometers in the cars that they testified are used for that purpose.

Two of the officers, Michael Metcalf and Joseph VanDeWege, testified that the four men appeared to be exchanging the tires of the two cars.[1] This is confirmed by a recording of the entire incident made by the video unit in one of the patrol cars. This video was introduced in evidence and viewed by the juvenile count, and it has also been viewed by this Court. When the officers arrived at the scene, both of the cars were on jacks. O.A.G. was kneeling beside the left rear wheel of the maroon Honda, by the jack. A second man was holding a tire tool and rolling a mounted tire from the maroon Honda to the tan Honda. The other two men were bent over, studying the right rear wheels of the two vehicles. At the approach of the officers, O.A.G. stood and walked behind a nearby trash dumpster. The other men also stopped their activities and tried to walk away from the two cars. The officers testified that all four men's hands were heavily soiled, as if they had been changing or handling the wheels and tires.

The maroon Accord belonged to Sherita Brown. Brown testified that it had been stolen that very day from a shopping mall parking lot. She testified that when she recovered her car at the impound lot, the ignition was broken, cameras were missing, and the driver's window was

_____

[1] In ordinary usage, the phrase "changing a tire" means changing both the tire and the wheel on which it is mounted, and this appears to be how the phrase was used by the witnesses in this case. There is no evidence that O.A.G. and his companions were removing the tires from the wheels of the two cars.

damaged. Brown also testified that "[t]he tires—one of them was bigger than what was originally on there." Brown testified that she paid $60 to purchase a replacement tire.[2]

The tan Accord belonged to Maria Alvarez. Alvarez testified that it had been stolen the day before, also from a shopping mall parking lot. She testified that in addition to the broken ignition, her car's body had been damaged on the passenger side and the "rims" had been "taken off."[3] Alvarez testified that she had turned the car over to her nephew to repair and did not know how much the repairs would cost.

O.A.G. lived at the apartment complex with his mother. She testified at the hearing that she had asked O.A.G. to take some trash to the dumpster. A few minutes later, two police officers knocked at her door and told her that O.A.G. had been arrested. A neighbor testified that he had made several trips to the dumpster that afternoon and noticed some persons standing by the two cars. O.A.G. was not among them. Later, the neighbor noticed O.A.G. leave his apartment with a load of trash, only to return with the officers about five minutes later. In rebuttal, one of the police officers testified that when he spoke to O.A.G.'s mother that afternoon, she told him that O.A.G. had been gone from the apartment for thirty or forty minutes.

One paragraph of the delinquency petition alleged that O.A.G. committed theft by unlawfully acquiring or otherwise exercising control over a motor vehicle belonging to Sherita Brown valued at more than $1500 but less than $20,000 with the intent to deprive Brown of the property. Another paragraph made the same allegation with regard to Maria Alvarez's vehicle. At

---

[2] The record does not indicate whether Brown spent $60 to replace the tire alone, or to replace both the tire and wheel.

[3] We infer that Alvarez used the word "rims" to refer to wheels.

3

the conclusion of the hearing, the juvenile court found that the evidence did not support the allegations that O.A.G. had been a party to the theft of the cars. However, the court found that the evidence did support a finding that appellant had been a party to the theft of one tire from each car, with each tire having a value of at least $50.

In points of error three and four, O.A.G. contends that the evidence is legally insufficient to sustain the finding that he appropriated tires from Brown and Alvarez with the intent to deprive them of the property. In points one and two, O.A.G. contends that the evidence is legally and factually insufficient to sustain the finding that the tire stolen from Alvarez had a value of at least $50.[4]

Adjudications of delinquency are based on the criminal standard of proof. Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2008). Therefore, we review the sufficiency of the evidence by applying the standard applicable to challenges to the sufficiency of the evidence in criminal cases. *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.). In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the verdict is clearly wrong and manifestly unjust, or if it is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

---

[4] Theft of property having a value of less than $50 is a class C misdemeanor punishable only by fine and is not delinquent conduct. *See* Tex. Penal Code Ann. § 12.23 (West 2003), § 31.03(e)(1)(A) (West Supp. 2008); Tex. Fam. Code Ann. § 51.03(a)(1) (West 2008).

There is no dispute that the two Honda Accords had been stolen. Moreover, the evidence shows that one tire and the wheel on which it was mounted had been removed from Brown's car and replaced with a wheel and tire of a different size. Both the police testimony and the video support a finding that this substitute wheel and tire were taken from Alvarez's car. O.A.G. contends, however, that the State failed to prove that he was a party to these thefts and, in particular, failed to prove that he acted with the intent to deprive Brown and Alvarez of their property. He argues that there is no evidence that he knew that the two cars had been stolen. He urges that "his venturing onto the scene just moments before the police arrived, his presence near the cars and his action in helping to change a tire do not prove that he was engaged in the theft of a tire from each of the vehicles."

O.A.G.'s mother testified at the hearing that he had been gone from the apartment for only a few minutes, but she told a police officer on the afternoon in question that O.A.G. had been gone for at least half an hour. The evidence also reflects that O.A.G. was either related to or acquainted with each of the other three persons found at the scene.[5] It is reasonable to infer that even if O.A.G. was not involved in the thefts of the two vehicles, he knew that the vehicles had been stolen and that none of the persons present were authorized to remove the wheels and tires. Viewing the evidence in the light most favorable to the juvenile court's findings, we conclude that a rational trier of fact could find beyond a reasonable doubt that O.A.G. was a party to the thefts of the tires

---

[5] The other persons were identified as: Fadul Aguirre, an adult who was on bail for car theft; E.P., O.A.G.'s brother; and a person identified only as Jorge, who was shown to be O.A.G.'s cousin and Aguirre's friend.

both by his own conduct and by the conduct of others for whom he was criminally responsible. *See* Tex. Penal Code Ann. §§ 7.01, .02 (West 2003). Points of error three and four are overruled.

Although the evidence supports the finding that O.A.G. was a party to the theft of Alvarez's tire, we agree with his contention that the evidence is legally insufficient to prove that the tire was worth $50 or more. In the context of this case, the value of stolen property is its fair market value at the time and place of the offense or, if the fair market value cannot be determined, the cost of replacing the stolen property within a reasonable time after the theft. Tex. Penal Code Ann. § 31.08(a) (West 2003). "Fair market value" means the amount the property would sell for in cash, given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991).

Alvarez did not testify to the fair market value of the tire stolen from her automobile. Moreover, the evidence shows that Alvarez had not purchased a replacement tire or made any other repairs because she was waiting for her nephew to do the work. Nevertheless, the State argues that the value of the tire removed from Alvarez's car was proved by Brown's testimony that she had spent $60 to replace the tire stolen from her car. The State contends that because both cars were 1995 Honda Accords, the juvenile court could reasonably infer that Alvarez's stolen tire had the same value as Brown's stolen tire.[6]

Brown did not testify to the fair market value of her missing tire, that is, to the amount for which she could sell such a tire. It follows that her testimony has no tendency to prove the fair

_____

[6] The State variously describes Brown's testimony as establishing either the fair market value or the "replacement value" of the tire stolen from Alvarez's car. We assume that the latter term refers to the replacement cost.

market value of the tire stolen from Alvarez's car. Brown did testify to the cost of replacing her stolen tire, but this testimony does not prove the cost of replacing Alvarez's stolen tire. Even if we assume that both cars had the same original equipment wheels and tires when new in 1995, there is no evidence that twelve years later the wheels and tires on Brown's car were the same as those on Alvarez's car. In fact, the evidence shows that the wheels, at least, were not the same. On the video, the wheels on Brown's Accord appear to be standard original equipment wheels, but the wheels on Alvarez's car appear to be more highly styled custom wheels. In addition, Brown testified that the tire that had been placed on her car—that is, the tire that had been taken from Alvarez's car—was "bigger than what was originally on there," from which it may be inferred that the wheel on which the tire was mounted—also taken from Alvarez's car—was a different size. Given the obvious differences in the wheels, no reasonable trier of fact could find beyond a reasonable doubt that the cost of replacing the tire stolen from Alvarez's car would necessarily be the same as or greater than the cost of replacing the tire stolen from Brown's car. Point of error one is sustained. We need not address point of error two.

O.A.G.'s fifth and sixth points of error concern the juvenile court's restitution order. Brown testified that the theft of her car had caused her a total out-of-pocket loss of $495. The only monetary loss suffered by Alvarez as at the time of the hearing was the $170 impound fee. Dividing the total of $665 by four, the court orally ordered O.A.G. to pay $166.25 in restitution. In point of error five, O.A.G. argues that the court's calculations included the losses resulting from the thefts of the two automobiles for which he was found not guilty. He contends that the restitution order should be limited to the loss resulting from the thefts of the tires, or $60. In point of error

7

six, O.A.G. points out that the dispositional order of probation orders him to pay $243.20 in restitution, an amount that is inconsistent with the court's oral order.

The State concedes that the restitution order should be limited to the loss resulting from the theft of the tires. The State also agrees that this loss was shown to be only the $60 Brown spent to replace her tire. Because Alvarez had not replaced her stolen tire as of the time of trial, the State concedes that she was not entitled to restitution. *See* Tex. Fam. Code Ann. § 54.041(c) (West 2008) (restitution limited to "actual damages"). Finally, the State concedes that the dispositional order of probation should be modified to reflect the proper amount of restitution. Accordingly, we sustain points of error five and six.

In his last point, O.A.G. complains that the juvenile court's judgment of delinquency erroneously states that he stole motor vehicles having a value of $50 or more but less than $500 from Sherita Brown and Maria Alvarez. The State concedes that this is a misstatement and that O.A.G. was found to have stolen only tires. Point of error seven is sustained.

The judgment of delinquency is modified to state that O.A.G. violated the penal laws of this State by unlawfully acquiring and otherwise exercising control over property, namely a tire, of the value of at least $50 but less than $500 without the effective consent of Sherita Brown, the owner of the property, and with the intent to deprive the owner of the property. The judgment is further modified to delete all reference to a finding of delinquent conduct based on the theft of property from Maria Alvarez. Finally, the dispositional order of probation is modified to order the payment of restitution in the amount of $60.

8

As so modified, the juvenile court's judgment is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Modified and, as Modified, Affirmed

Filed: March 12, 2009