

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00496-CR

Jamila Rene **CORTES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR7659
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Beth Watkins, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: March 6, 2024

AFFIRMED

Appellant Jamila Rene Cortes appeals her theft conviction on sufficiency, evidentiary, and ineffective assistance grounds. We affirm.

### BACKGROUND

Cortes worked in the information technology department for Energy Transfer Partners. Part of her job involved replacing old computers as part of the "Refresh Program." The company collected "older machines until we had a large enough quantity to make it worthwhile" and then had them picked up by a "vendor that basically disposes of equipment."

IT employee Robert Castro suspected Cortes of stealing Energy Transfer's computers and equipment. In October 2017, Castro's HP 650 GI laptop disappeared from his desk. He suspected Cortes but had no proof. He soon found a post on Craigslist advertising a laptop for sale that looked like his. In the photo accompanying the post, Castro recognized Cortes's hand holding the laptop and the distinct office carpet in the background. He had a friend contact the Craigslist poster, and the poster replied with an email that was signed "Jamila Cortes." Castro took this information to Raymond De La Vega in Energy Transfer's human resources department. Ultimately, Russell Sweeney, the head of security for the company, began an investigation.

Sweeney set up a sting. He had a security contractor named Christopher Acevedo respond to the post advertising the HP 650 GI laptop. Again, the Craigslist poster replied via an email with the name "Jamila Cortes." Acevedo paid $212 and bought the computer from Cortes. The originating address on the package was Energy Transfer's office in San Antonio. Sweeney then had Acevedo ask to buy a new computer. Acevedo bought a new HP 650 G2 ProBook for $962. "[I]t had an original shipping label from HP straight to Energy Transfer. It was in the same exact box with the new shipping label added onto it." Acevedo turned the computers over to Sweeney.

Sweeney checked the serial numbers of the computers Acevedo purchased and determined that they were company property. Sweeney also checked Fed Ex records and found:

> that there were numerous packages that were sent out from our office to various addresses across the country that had no nexus to our company, meaning that they were not employee names, they were not employee addresses, they were not company addresses. In some instances, they were not even cities or even states that we did business in. So they were suspect.

In all, Sweeney testified "149 [unauthorized] packages were shipped from our office to various cities and states across the country." Sweeney met with Cortes about a "violation of our company's code of ethics" and De La Vega sat in to witness the conversation.

At first, Cortes denied knowing anything, but after Sweeney shared that he had instructed Acevedo to make the two purchases, she yielded. She expressed relief, but remained "professional, collected, just like any business meeting that you would have in an office. It was that kind of a conversation." She admitted that for the last six months, she had been taking new and used company computers and selling them on eBay and Craigslist to buyers all over the country. She ordered new hard drives and installed them in the old computers before selling them. She also cannibalized the used computers for parts.

Cortes handwrote a statement acknowledging that she took about fifty "used laptop machines" from the refresh project, 10-15 of which she resold or gave as gifts—all computers with new hard drives. Cortes said she made sure there was no proprietary information on the computers she sold. She also admitting taking 20 new computers and selling them online. She estimated that she had made $10,000 in sales. She apologized and expressed a desire to repay the company. She provided details "that only she would know, that [Sweeney] didn't know."

Sweeney inventoried the new computers that had not yet been distributed as part of the refresh program and found 42–45 computers missing. Sweeney said the company had paid a total of $47,951.52 for those computers. After an Ohio company learned that it had purchased four stolen computers, it paid Energy Transfer $4,000. A jury found Cortes guilty, and the trial court assessed punishment at five years in prison, granted Cortes community supervision, and ordered restitution of $43,951.52.

**ANALYSIS**

Cortes argues: (1) the evidence is insufficient to support a finding that the value of the property stolen was $30,000 or more; (2) the trial court erred in admitting her unwarned statement; (3) her attorneys provided ineffective assistance; and (4) the trial court erred in admitting hearsay.

*Sufficiency*

Cortes argues the State failed to prove the value of the property stolen exceeded $30,000.

*Applicable Law and Standard of Review*

A person commits the third-degree felony offense of theft if "[s]he unlawfully appropriates property with intent to deprive the owner of property" and "the value of the property stolen is $30,000 or more but less than $150,000[.]" TEX. PENAL CODE ANN. § 31.03(a), (e)(5). In this case, the State alleged that Cortes unlawfully appropriated 40 electronic items with a value of $30,000–$150,000. The theft chapter of the Penal Code defines "value" as "(1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." TEX. PENAL CODE ANN. § 31.08(a). "Methods of proving fair market value have varied from showing retail price or sale price, to admitting testimony of an owner's opinion of value, to a non-owner's, 'expert' opinion of value." *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991) (internal citation omitted). "No one method has ever been held to be exclusive." *Id*.

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). As a reviewing court, we "give deference 'to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19). "[N]o evidence is ignored because the standard requires a reviewing court to

view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

### *Application*

Cortes argues that the evidence is insufficient to support the $30,000 minimum value the jury found given discrepancies involving "1) calculation of the dollar value, 2) dates of shipments, 3) weight of shipments, 4) distinctions as to whether whole computers or components were stolen and distributed, as well as any 5) verification of identify of person or persons sending Fed Ex shipments." Because a jury "may accept or reject any part or all of the testimony given by State or defense witnesses," such "discrepancies" do not necessarily signal a lack of proof beyond a reasonable doubt. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978).

Cortes points specifically to Sweeney's unequivocal testimony that, except for the two packages she sent to Acevedo from the Fed Ex account, he did not know "what was in those packages that were sent out." As Cortes notes, many of the packages she sent weighed less than one pound and so cannot reasonably support an inference that a laptop was in the package. We agree with Cortes that "blanket statements as to quantity of items without specifics as to what was being shipped [are] insufficient to calculate value." But that is true only in the absence of other evidence of value. Here, the State presented other circumstantial evidence that Cortes took at least $30,000 worth of new computers, irrespective of how many new or used computers she shipped using the company's Fed Ex account or admitted to taking. In particular, the State presented

business records showing the price Energy Transfer paid for each of the missing new computers ranged from $674.64 to $1,187.98, with most computers valued around $1,000.

These new computers were stored next to Cortes's cubicle in an area secured by card access that only Cortes and her supervisor, Steve Draton, had regular access to. Draton testified that his manager accessed the office "maybe two times a year" and the facilities agent could access it "in case something was on fire." Others could enter, but only if Cortes or Draton brought them in. Sweeney investigated Draton and Castro by looking at their records, purchases, and email traffic, but found no suspicious activity. Sweeney found "no evidence to show that anybody else was involved," so cleared Draton and Castro of suspicion. And Cortes denied that anyone in the San Antonio office had worked with her. This is evidence from which a reasonable jury could infer that, of the $47,951.52 in missing new computers, Cortes alone was responsible for at least $30,000 worth. *Keeton*, 803 S.W.2d at 305; *Kent v. State*, 483 S.W.3d 557, 562 (Tex. Crim. App. 2016).

Because the jury had before it ample evidence from which to rationally conclude the aggregate theft met the $30,000 threshold, we overrule Cortes's claim of insufficient evidence.

### *Admission of Unwarned Statement*

Next, Cortes asserts that the trial court erred in admitting the written statement she gave to Sweeney and De La Vega because they acted under color of law but failed to advise her of her rights under *Miranda* and article 38.22, rendering her statement involuntary. *See Wilkerson v. State*, 173 S.W.3d 521, 529–30 (Tex. Crim. App. 2005); TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2. To preserve such an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired and obtain a ruling. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). "[T]he objection must be made at the earliest possible opportunity," and "the point of error on appeal must comport with the objection made at trial." *Wilson, id.* An appellate court will uphold a trial court's

ruling on any legal theory applicable to the case but will reverse a trial court's ruling only on a legal theory litigated at trial. *See Spielbauer v. State*, 622 S.W.3d 314, 319 (Tex. Crim. App. 2021); *Alford v. State*, 400 S.W.3d 924, 928–29 (Tex. Crim. App. 2013).

Here, Cortes filed a boilerplate motion to suppress and, at the pretrial hearing, raised general voluntariness arguments. Rather than arguing that Sweeney and De La Vega were acting under color of law, she focused on their alleged promises that she would not be terminated if she gave a statement. In fact, at the hearing, she specifically acknowledged that law enforcement was *not* involved in the HR meeting. *See Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008) (noting distinct theories of involuntariness). The trial court denied the motion to suppress but agreed Cortes would be entitled to a jury charge on general voluntariness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 6, 7. We conclude the arguments Cortes raised in the trial court were not "sufficiently specific to preserve the arguments [s]he now makes on appeal." *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

Furthermore, at the charge conference, Cortes specifically asked the trial court to adjust the voluntariness instruction to *delete* language that would apply to a *Miranda* or article 38.22 section 2 theory of involuntariness: "It sounds like we're in agreement on this. But the -- the language currently in -- in the Charge concerning the voluntary versus involuntary statement appears to be tailored for statements taken by a police officer, by -- by a government agent. So I don't think it is appropriate here." This request is at odds with the argument Cortes has raised on appeal.

Because Cortes's theory of involuntariness on appeal conflicts with the theory she raised in the trial court, Cortes failed to preserve it. TEX. R. APP. P. 33.1(a)(1)(A); *Wilson*, 71 S.W.3d at 349; *see also Ruffins v. State*, 666 S.W.3d 636, 642 (Tex. Crim. App. 2023) (estoppel may apply where party raises claim on appeal inconsistent with that party's prior conduct).

We therefore overrule Cortes's complaints about the voluntariness of her statement.

***Ineffective Assistance***

Cortes next argues that her attorneys were ineffective because they: (1) impeached State's witness Robert Castro for no reason; (2) failed to object to the State's improper impeachment of defense witness Adrian Cleveland with evidence from the trial; and (3) failed to call expert witnesses to challenge the evidence of value or the authenticity of the Craigslist emails.

*Applicable Law and Standard of Review*

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that counsel's performance was deficient and she suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Ex parte Aguilar*, 537 S.W.3d 122, 126 (Tex. Crim. App. 2017) (internal quotation marks omitted). Prejudice exists if an appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id*. at 813. She must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. On direct appeal of an ineffective assistance of counsel claim, there is "[a] substantial risk of failure" because "[i]n the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id*. at 813–14. "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so

outrageous that no competent attorney would have engaged in it.'" *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013) (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

*Application*

Cortes did not file a motion for new trial. As a result, her attorneys have not had the opportunity to explain their conduct and, as explained below, their challenged conduct was not "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

Cortes first argues that her attorneys' cross-examination of Castro with questions about whether he had been suspended or disciplined for harassing Cortes served no strategic purpose. But Castro denied having been suspended or disciplined. Her attorneys then impeached Castro by questioning trial witness Michael Coble. Coble testified that Castro made false allegations of theft against him and Cortes and "was called in to HR, and he was forced to write a -- an apology letter. It came out in an email." When Cortes's lawyers asked Coble, "if Mr. Robert Castro testified that he had never been disciplined by HR before, would that be inaccurate?" Coble replied, "Very inaccurate." Given this later impeachment of Castro, the attorneys' questioning was objectively reasonable—and indicative of proper investigation rather than a "lack of investigation" as Cortes alleges. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (if no direct evidence of strategy is available then an appellate court "will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined"); *see Cueva v. State*, 339 S.W.3d 839, 875 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd).

Second, Cortes complains about her attorneys' failure to object to the State's cross-examination of defense witness Adrian Cleveland with what she argues were damaging questions such as, "Would it surprise you that she admitted to stealing 20 new laptops from Energy Transfer?" But her attorneys could have strategically decided not to object to these questions. The

questions went to the written admissions Cortes had signed during the HR meeting. Sweeney had already testified about the admissions and Cortes had already set forth her defense that Sweeney dictated the admissions. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (counsel might forgo objection to prevent impression of stonewalling evidence). Therefore, Cortes has failed to rebut the presumption that her attorneys acted reasonably. *Thompson*, 9 S.W.3d at 814.

Cortes's final ineffective assistance claim focuses on her attorneys' failure to call expert witnesses to challenge the State's evidence of value and the authenticity of the Craigslist emails admitted as State's Exhibit 9. The record in this case is insufficient to evaluate this claim. *See Rylander v. State*, 101 S.W.3d 107, 109–11 (Tex. Crim. App. 2003). Because we do not know whether her attorneys consulted with experts—or, if not, why—we cannot deem the failure to present expert witnesses objectively unreasonable. *Id*. at 110–11.

Because Cortes's attorneys' challenged conduct was not "so outrageous that no competent attorney would have engaged in it," *Nava*, 415 S.W.3d 308, we overrule Cortes's ineffective assistance claim.

### *Admission of Email*

In her final argument on appeal, Cortes argues the trial court erred in admitting State's Exhibit 9—the email thread detailing the transaction between Cortes and Acevedo—because the thread "was not used merely as context," but rather to show that she "was seller of the items."

#### *Applicable Law and Standard of Review*

Texas Rule of Evidence 801(d) defines hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). Texas Rule of Evidence 801(e) defines statements that are not hearsay, including an opposing party's statement. TEX. R. EVID. 801(e)(2)(A) (noting a statement offered against an opposing

party that was made by the party in an individual or representative capacity is not hearsay). We review the trial court's ruling on a hearsay objection for an abuse of discretion and are required to affirm the trial court's decision unless it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

*Application*

The trial court admitted State's Exhibit 9 over Cortes's hearsay objection, accepting the State's argument that the statements were admissible as non-hearsay. The trial court found Cortes's statements admissible as admissions of a party-opponent and Acevedo's statements admissible because they were not offered for the truth of the matter asserted but rather to provide context to Cortes's admissions. We agree that the email thread was admissible under these theories. Sufficient evidence, including signature blocks on the emails, authenticated the emails as having been written by Cortes. And, because the trial court could have reasonably concluded the emails were written by Cortes herself, it did not abuse its discretion by concluding they qualified as non-hearsay statements by a party opponent. TEX. R. EVID. 801(a) (defining "statement" as including "a person's oral or written verbal expression"); TEX. R. EVID. 801(e). Additionally, the trial court did not abuse its discretion by concluding Acevedo's emails, which he testified he wrote, were admissible because they were offered for the limited purpose of providing an explanation for the party-opponent's portion of the conversation and not for their truth. *See, e.g.*, *United States v. Cooke*, 675 F.3d 1153, 1156 (8th Cir. 2012); *United States v. Safavian*, 435 F. Supp. 2d 36, 44–45 (D.D.C. 2006). While we agree with Cortes that the State offered the email thread to show that she "was seller of the items," the evidence was admissible under the rules of evidence. We therefore overrule Cortes's evidentiary complaint.

## CONCLUSION

Having overruled each of Cortes's appellate arguments, we affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH