Martin **MENDOZA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–94–133–CR.

Court of Appeals of Texas,
Corpus Christi.

May 2, 1996.

Rehearing Overruled June 6, 1996.

Larry Warner, Brownsville, for appellant.

Luis V. Saenz, District and County Attorney, Brownsville, Gustavo Ch. Garza, District/County Attorney, Raymondville, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found appellant guilty of robbery, and the trial court assessed punishment, enhanced by two prior felony convictions, at seventy-five years in prison. We reverse and remand.

The evidence established that appellant and companions entered a convenience store known as Coastal Mart, on two occasions, a few hours apart, in the early morning hours of June 1, 1993, taking four twelve packs of beer, two packs of cigarettes and two sticks of beef jerky. The indictment alleged that appellant did "unlawfully, in the course of committing theft and with intent to obtain and maintain control of the property to be stolen, intentionally and knowingly threaten and place FRANK SANCHEZ in fear of imminent bodily injury."

■ By two points of error and timely trial objection, appellant complains that the

charge should have included an instruction on the lesser included offense of theft. We agree.

██ An instruction on a lesser included offense is warranted if: (i) the lesser included offense is included in the proof necessary to establish the offense charged, and (ii) some evidence exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994). Theft can be a lesser included offense of robbery. *Parr v. State*, 658 S.W.2d 620, 622 (Tex.Crim.App. 1983). In light of the indictment ("in the course of committing theft") it is necessarily so in this case. *Jacob v. State*, 892 S.W.2d 905, 908–09 (Tex.Crim.App.1995). The only remaining question then, is whether some evidence exists in the record that would rationally permit a jury to find appellant only guilty of theft.

██ While a jury may selectively believe all or part of the evidence at trial, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence affirmatively establishing the possibility that the defendant is only guilty of the lesser offense. *Bignall*, 887 S.W.2d at 24. Evidence from both the State and the defendant is considered. *Dowden v. State*, 758 S.W.2d 264, 269 (Tex.Crim.App.1988); *Campbell v. State*, 571 S.W.2d 161, 162 (Tex.Crim.App.1978) (defendant's testimony alone established his entitlement to instruction on lesser included offense).

Appellant testified on direct as follows:

Q: All right. And where did you go from there?

A: From there, we were going home. Cavazos suggested that we needed more beer, and I said I know where I can get beer easy, those were my exact words. So I said, let's go to Coastal, so we went to Coastal.

Q: What happened at Coastal?

A: We went to Coastal, I was in the truck, I told everybody to stay inside the truck, that I would take care of everything because I didn't want to expose the other people, that was, to Frank Sanchez. So I went inside the store to ask Frank for some beer. At that time, Cavazos came out of the truck, and by the time I know, Cavazos was coming with a twelve pack of beer from the back.

Q: And what do you mean that you didn't want to expose them to Frank Sanchez?

A: I didn't want them to know that Mr. Frank Sanchez would allow me to take beer from the Coastal Mart, sir.

Q: Why?

A: Because then I would be like giving him up, and that was something that I didn't want to do. That was supposed to be just between me and him.

Q: Have you had an occasion prior to this time to go to Coastal Mart and get beer either on credit or—

A: I wouldn't get it on credit, I would just get it, he would allow me to take the beer.

Q: Give it to you?

A: Yes, sir.

Q: And who is he?

A: Mr. Frank Sanchez.

Q: Okay. And on how many occasions before that time?

A: I would say about twice.

Q: Twice. All right. Now, on that occasion, the four of you went in and you said by the time you turned around, that Cavazos was walking with two six packs?

A: With a twelve pack.

Q: With a twelve pack?

A: Yes, sir.

Q: What was the value of that twelve pack, if you know?

A: I would say no more than five or six dollars.

Q: No more than six dollars?

A: No more than six dollars.

Q: And what transpired after that?

A: Nothing really transpired, I just told Frank, man, don't worry about it, I'll take care of this dude, and he said it's all right. And then Henry said, hey, man, I'll pay for it, and Frank Sanchez just stated it's on me, man, don't worry. So I said, let's go,

man. We got in the truck, we went home to Gloria's house, we drank the twelve pack and we danced and everything, the beer ran out. We went for the same thing, this time only me and Cavazos got off the truck.

Q: What transpired on that occasion?

A: I went inside the store, I told Frank, hey, man, don't worry about this guy, he ain't going to say nothing and nothing is going to happen, ain't nobody going to tell nobody, it's all right. I told him in a slang word, (Spanish spoken) which mean it's under the table, it's just between us. So he says at that time that it was too much heat already. So I said don't worry about it, man, I'll take the heat. If they catch me, I'll just say I took it, so he just give me his back. So Cavazos went to the back and got three twelve packs, came up to the front door to where I was at, and at that time he grabbed two packs of cigarettes and two beef jerkys and he walked out. And I started talking to Frank, and I tried to calm him down cause he looked like he was paranoid. I guess he was paranoid because I exposed him to Henry. So we left, and this was it.

 In *Cavazos v. State,* we affirmed the robbery conviction of appellant's companion on the night in question. 904 S.W.2d 744 (Tex.App.—Corpus Christi 1995, pet. ref'd). Cavazos argued on appeal that he was entitled to an instruction on the lesser included offense of theft. We rejected his contention, noting particularly the absence in the record of evidence affirmatively showing the value of the property actually stolen or that the clerk was not threatened with imminent bodily in-

jury. *Id.* at 749. The record in the case *sub judice* contains what was lacking in *Cavazos.* Appellant testified that the value of a twelve pack was no more than six dollars. He further testified that a total of four twelve packs were taken, along with two packs of cigarettes and two sticks of beef jerky.[1] More important, appellant's testimony effectively denies that the clerk was ever placed in fear of imminent bodily injury. While this testimony conflicts with that of the clerk, it raises a fact issue as to whether this was a robbery or theft. In sum, there is evidence which would rationally enable a jury to find that if appellant is guilty, he is guilty only of misdemeanor theft.[2] Having determined the existence of error in the charge, we must now conduct a harm analysis.

 In *Almanza v. State,* the court of criminal appeals set out the standard of review if charge error is the subject of timely objection in the trial court. 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opin. on State's motion for rehearing). In such situations, a reversal is required if the error is calculated to injure the rights of the defendant, which means no more than that there must be some harm to the accused from the error. *Id.* The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* Given the option, the jury might have convicted appellant of misdemeanor theft, for which appellant would have received significantly less than seventy-five years. This is some harm. Points of error one and two are sustained.

1. At the time of the offense, theft of items valued under twenty dollars was a class C misdemeanor while theft of items valued at twenty or more but less than two-hundred dollars was a class B misdemeanor. Act of September 1, 1991, 72nd Leg., R.S., ch. 82, § 1(e), 1991 Tex.Gen.Laws 2003 (amended 1993) (current version at Tex.Penal Code Ann. § 31.03(e) (Vernon Supp.1996)).

2. The elements of theft are: a person, with the intent to deprive the owner of property, unlawfully appropriates that property, without the effective consent of the owner. *Peterson v. State,* 645 S.W.2d 807, 811 (Tex.Crim.App.1983). In its brief, the State argues that it did not rely on a completed theft, apparently alluding to the penal code's definition of "in the course of committing theft." The penal code chapter on robbery provides: *"In this chapter* 'in the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex.Penal Code Ann. § 29.01 (Vernon 1994) (emphasis added). This statutory definition does not transform the indictment from one that charges theft to one that does not. The State also argues that there is no evidence in the record of the actual owner. An examination of the record reveals that the identity of the owner is sufficiently established.

The judgment is reversed, and the cause remanded for a new trial.