

# NUMBER 13-11-00599-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

YOLANDA VARGAS GONZALEZ,                       **Appellant,**

**v.**

THE STATE OF TEXAS,                               **Appellee.**

### On appeal from the County Court at Law No. 4 of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Yolanda Vargas Gonzalez appeals her conviction of theft of property valued at more than $50.00 and less than $500.00, a class-B misdemeanor.  *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2)(A)(i) (West Supp. 2011).  A jury found appellant guilty, and the trial court assessed punishment at 90 days' confinement in the county jail and a $650.00 fine.  The trial court suspended appellant's confinement and placed her

on nine months probation. Appellant challenges: (1) the sufficiency of the evidence to support her conviction; (2) the sufficiency of the evidence to support her affirmative defense; (3) the trial court's charge to the jury; and (4) the trial court's imposition of a fine after it orally suspended appellant's sentence.[1] We affirm.

## I. BACKGROUND[2]

Maya Martinez, a Macy's loss prevention detective, became suspicious of appellant after observing her pace back and forth in the young men's department. Detective Martinez watched as appellant was joined by her daughter and the two entered a fitting room together. Although they took a jacket, purple shirt, and some underwear garments with them, they exited carrying only the jacket. Detective Martinez inspected the fitting room after they left. None of the other items were present.

Detective Martinez followed them through the store. She testified that she saw appellant's daughter switch the price tag on a purse with a price tag from a cheaper one and hand it to her mother. Her mother then purchased the purse at the cheaper price, less an additional 10% from a discount coupon. The trial court admitted a copy of appellant's receipt and the two price tags, showing appellant's daughter placed a $98 price tag on a $228 purse.[3]

---

[1] We reorganized appellant's arguments for clarity.

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] The $98 purse was apparently on sale for $73.50. With appellant's 10% discount coupon, she paid the sum of $71.61, including tax, for the $228 purse.

Detective Martinez testified that before appellant exited Macy's, appellant handed her daughter a shirt, which appellant had not purchased. Appellant's daughter placed it in her purse. Detective Martinez followed appellant outside, informed her that she was with loss prevention, and redirected her to the loss prevention office inside the Macy's store. Detective Martinez noticed appellant was wearing the purple shirt, which she had taken into the fitting room, under her outer sweater. Detective Martinez thereafter found five articles of underwear, a pair of earrings, and a shirt in appellant's daughter's handbag. None of these items were purchased. Detective Martinez asked appellant about her conduct, and "[s]he said I thought it was easy and I wasn't thinking." Detective Martinez's testimony was supported by video surveillance that was admitted into evidence and shown to the jury.

## II. INSUFFICIENCY OF THE EVIDENCE

In her fourth through sixth issues, appellant argues that the evidence is factually insufficient, legally insufficient, and that no evidence exists, to support her conviction. In her seventh issue, she argues, in part, that the trial court erred by denying her motion for new trial, wherein she asserted her evidentiary sufficiency challenges. In reviewing appellant's brief, appellant's evidentiary sufficiency challenges appear to be premised on five main contentions:     (1) the evidence is insufficient to convict appellant as the primary actor in the theft because her daughter stole most of the property; (2) the evidence is insufficient to convict appellant as a party to her daughter's theft because her daughter did not steal all of the charged items because appellant stole one item—a shirt; (3) the evidence is insufficient to prove appellant worked together with her daughter to

3

appropriate property or knew of her daughter's price-switch on the purse to make appellant a party to those acts; (4) the evidence is insufficient to prove that the stolen property had a value of at least $50; and (5) the evidence is insufficient to prove the identity of the owner of the property.   We address these points in turn.[4]

## A.   Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).   The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony.   *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

[4] To the extent appellant argues the evidence is factually insufficient to support her conviction, we note that on elements that the State has the burden to prove beyond a reasonable doubt, we review both a legal sufficiency challenge and a factual sufficiency challenge under the same *Jackson v. Virginia* sufficiency standard.   *See Jackson v. Virginia*, 433 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd).   In *Brooks*, the Court of Criminal Appeals eliminated factual sufficiency review of the elements the State is required to prove beyond a reasonable doubt and stated "[i]t bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard (especially one that is 'barely distinguishable' or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard)."   *Brooks*, 323 S.W.3d at 905–06.   Thus, we no longer refer separately to legal and factual sufficiency review.   *See id.*

Appellant claims *Brooks* is inconsistent with our responsibility under the Texas Constitution and invites us to disregard *Brooks* and review her factual sufficiency challenge.   We decline appellant's invitation; "we are duty bound to follow precedent issued by the Texas Court of Criminal Appeals in this matter."   *Kiffe v. State*, 361 S.W.3d 104, 109 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)).

Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* "A person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West 2011); *Mendoza v. State*, 923 S.W.2d 760, 763 n. 2 (Tex. App.—Corpus Christi 1996, no writ). "Appropriate" means "to acquire or otherwise exercise control over property other than real property," TEX. PENAL CODE ANN. § 31.01(4)(B) (West 2011), and such appropriation is "unlawful" if it is without the owner's effective consent. *Id.* § 31.03(b)(1). An owner is "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]" *Id.* § 1.07(a)(35)(A).

5

**B. Discussion**

**(1) Primary Actor to Theft or a Party to Theft**

Appellant complains that the evidence is insufficient to: (1) convict appellant as the primary actor because her daughter stole most of the property; (2) convict appellant as a party to her daughter's theft because her daughter did not steal all of the charged items; (3) prove appellant worked together with her daughter to appropriate property or that she knew of her daughter's price-switch on the purse to make her a party to those acts. Appellant contends that she has a "mistake of fact" defense because she allegedly was not aware of her daughter's deception in switching the price-tags.

The jury charge instructed the jury to convict if the evidence proved appellant was a primary actor to theft or a party to her daughter's theft. The party instruction tracked the relevant statutory language:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both.
>
> A person is criminally responsible as a party for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. In this connection, you are instructed that mere presence of a person at the time of the offense is committed does not of itself constitute a person a party to an offense: but, when a person is actually present, she must either by words or agreement encourage another in the commission of an offense. Such agreement must be prior to or contemporaneous with the criminal event.

*See* TEX. PENAL CODE ANN. §§ 7.01, 7.02 (West 2011).

Appellant convolutedly argues that the evidence is insufficient to convict appellant as the primary actor for stealing *all* of the charged items because the daughter stole some

6

items; and that she cannot be a *mere* party to her daughter's theft because appellant clearly stole one item, thereby making her the primary actor in that theft. Appellant's argument discounts the possibility that appellant's theft of one of the items was done to aid her daughter's theft of all of the property. As properly noted in the charge, a person is criminally responsible as a party if the offense is committed by that person's own conduct, the conduct of another for which the person is criminally responsible, *or by both. See* TEX. PENAL CODE ANN. § 7.01 (West 2011) (emphasis added). That appellant acted together with her daughter and contributed to the theft does not exempt her from party status. *See id.*; *Rivera v. State*, 12 S.W.3d 572, 575 (Tex. App.—San Antonio 2000, pet. ref'd) (holding evidence must show that at the time of the offense the parties were acting together and that each contributed some part toward the execution of their common purpose) (citing *Brooks v. State,* 580 S.W.2d 825 (Tex. Crim. App. 1979)).

In determining whether a person attempts to aid another in the commission of an offense, the fact finder may consider events occurring before, during, or after the commission of the offense. *Perez v. State*, 41 S.W.3d 712, 717 (Tex. App.—Corpus Christi 2001, no pet.) (citing *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987)). "Furthermore, circumstantial evidence may be sufficient to show that one is a party to an offense[,]" and "intent may be inferred from the circumstantial evidence such as the acts, words, and conduct of the accused." *Id.* (citing *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Beardsley*, 738 S.W.2d at 684).

7

Here, the evidence shows that appellant stole a shirt, that her daughter stole several items, and that they hid some of the property on themselves while sharing a fitting room. When Detective Martinez asked appellant about the theft, appellant said she "thought it was easy and . . . wasn't thinking." In addition, the trial court admitted a DVD recording, taken from Macy's loss prevention's surveillance cameras, which showed appellant and her daughter taking concerted action to appropriate merchandise. For example, the recording captured appellant inspecting an article of underwear and holding it out while looking in the distance. Appellant promptly replaced the underwear on the underwear rack and walked away as her daughter approaches. Her daughter then took the underwear from the rack, and left the rack with what appears to be the same kind and color, if not the same article, of underwear.

Similar conduct occurred in other departments, including the handbag department, where appellant, after staring at a purse, walked away at her daughter's approach. As her daughter inspected the price tag on the purse, appellant stood a few feet away, glancing occasionally toward her daughter. Later, appellant handed her daughter the purse that she ultimately purchased, and the daughter switched its price tag with a tag from another purse while appellant stood nearby looking at other purses. Once the switch was complete, appellant's daughter handed the purse back to appellant, who immediately took it to a cashier and purchased it. The recording further shows that after purchasing the purse but before exiting Macy's, appellant handed her daughter, who was carrying the Macy's bag containing the purse, a shirt which had not been purchased. Appellant's daughter walked away from the aisle into some clothing racks, placed the

shirt into the Macy's bag, rejoined her mother in the aisle, and switched bags with her mother. They then exited the store.

Based on the evidence, we hold that a rational jury could find appellant's intent to act together with her daughter. We need not, therefore, analyze the strength of the evidence to convict appellant as a primary actor. *See Head v. State*, 299 S.W.3d 414, 426 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Rabbani v. State*, 847 S.W.2d 555, 558–59 (Tex. Crim. App. 1992)); *Barnes v. State*, 62 S.W.3d 288, 299 (Tex. App.—Austin 2001, pet. ref'd); *Sendejo v. State*, 953 S.W.2d 443, 451 (Tex. App.—Waco 1997, writ ref'd).

### (2)    Value of Property

Appellant complains that the evidence is insufficient to prove that the stolen property had a value of at least $50. We disagree. Value, for the purpose of classifying a theft offense, is generally the fair market value of the property at the time and place of the offense. TEX. PENAL CODE ANN. § 31.08(a)(1) (West 2011). Fair market value is defined as the amount the property would sell for in cash if given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991) (en banc); *Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

No one method for calculating fair market value has been deemed exclusive. *Keeton*, 803 S.W.2d at 305; *Uyamadu*, 359 S.W.3d at 759. Testimony of the store's asking price on the day of the offense "is certainly one method of proving fair market value," but "not the only one." *Keeton*, 803 S.W.2d at 306. Value reflected on a price tag is an acceptable method of proving fair market value. *See, e.g., Ortiz v. State*, 727

9

S.W.2d 37, 40 (Tex. App.—San Antonio 1987, pet. ref'd) ("Since what Hoover actually saw were price tags, they were in evidence and could properly be considered by the jury in determining value."). Additionally, testimony concerning a price printed on a price tag is an acceptable way of proving value. *See Bailey v. State*, 650 S.W.2d 507, 509 (Tex. App.—Houston [14th Dist.] 1983, no pet.) (testimony of value was reflected on the price tags); *see also Harrison v. State*, No. 14-10-00254-CR, 2011 WL 5589532, at *6 (Tex. App.—Houston [14th Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication) ("the price tags remained on 'pretty much all' the merchandise recovered" and the value of "each item of merchandise" was determined "by its price tag.").

Appellant acknowledges that Martinez testified the correct price tag for the purse was $228, and not the $98 price tag planted by her daughter. Appellant, rather, premises her challenge regarding value on a "mistake of fact" defense that her daughter did the price-switching and that she did not know of her daughter's deception. She concludes that because the only evidence presented regarding the value of the stolen property was the value of the purse that she purchased after her daughter switched the price tags, the evidence is insufficient to prove the value of at least $50.

We already determined that the evidence was sufficient to convict appellant as a party to her daughter's price-switching on the purse. Considering the value of the purse at the time and place of the theft, as evidenced by Martinez's testimony and the purse's receipt, we conclude a rational jury could have found appellant appropriated property valued at least $50. *See Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) ("Juries are permitted to make reasonable inferences from evidence at trial . . . .").

10

### (3) Ownership of Property

Appellant complains that the evidence is insufficient to prove the identity of the owner of the property. We hold that the evidence sufficiently proves the identity of the owner of the stolen property. As stated by the Texas Court of Criminal Appeals:

> Although the name of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same person (or entity)—regardless of the name—as shown by the evidence.

*Byrd v. State*, 336 S.W.3d 242, 252 (Tex. Crim. App. 2011). When evidence shows that a loss prevention officer is the employee of the title owner, such as a corporation like Macy's, it is sufficient to show that the loss prevention officer had a greater right of possession to the property than one who unlawfully appropriates the property. *See Castle v. State*, 718 S.W.2d 86, 88 (Tex. App.—Fort Worth 1986, no writ) ("[E]vidence that [security guard] was an employee of J.C. Penney is sufficient to show a greater right of possession in her than in appellant and to establish her as a special owner of the property."); *see also Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim. App. 1983)) ("A store security guard may be an owner of the company's merchandise for purposes of the theft statute if, at the time the offense is committed, he had a greater right to possession than the accused."); *Tucker v. State*, No. 01-01-00873-CR, 2002 WL 1869605, at *2 (Tex. App.—Houston [1st Dist.] Aug. 15, 2002, pet. ref'd) (not designated for publication) (citing *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986) (en banc)).

The evidence shows that Martinez was employed by Macy's as a loss prevention detective and that she was the same person named in the indictment and jury charge, which included the correct statutory definition of "owner." We hold that, as Macy's loss

11

prevention officer, Martinez had a greater right to possession of the stolen property and was thus established as the owner of the property. *See Sandone v. State*, 394 S.W.3d 788, 792 (Tex. App.—Fort Worth 2013, no pet.) ("As J.C. Penney's loss prevention supervisor, Butler had a greater right to possession of the ties than appellant . . . .").

After reviewing the evidence and all of appellant's evidentiary arguments, we hold that the evidence is sufficient to support appellant's conviction. We overrule appellant's fourth through six issues, and, in part, appellant's seventh issue.

### III. AFFIRMATIVE DEFENSE

By her eighth issue, and by her seventh issue to the extent she challenged it in her motion for new trial, appellant argues that the evidence failed to negate or refute beyond a reasonable doubt her affirmative defense of mistake-of-fact. Appellant's mistake-of-fact defense was that she, unaware of her daughter's price-switch, purchased the purse under the mistaken belief that the purse's price was the lesser amount on the incorrect price tag. In other words, appellant contends that at the time she left the store, she reasonably, but mistakenly, believed the purse was her property because she purchased it in good faith, not knowing of her daughter's price-switch. This issue is closely related to contentions already reviewed, but we review it separately under the standard of review for rejected affirmative defenses provided by the Texas Court of Criminal Appeals.

### A.    Standard of Review

A challenge to the sufficiency of the evidence to support a finding on an issue for which the defendant has the burden of proof may be made on legal or factual sufficiency grounds. *See Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013). In

12

evaluating whether there is legally insufficient evidence to support the finding, we first search the record for evidence favorable to the finding, disregarding all contrary evidence unless a reasonable fact-finder could not. *Id.* at 669. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.* In evaluating factual sufficiency, we consider the entire body of evidence in a neutral light to determine whether the finding on the affirmative defense was so "against the great weight and preponderance" of the evidence as to be manifestly unjust. *Id.* at 671.

**B.    Discussion**

Under both standards, we conclude the evidence is sufficient to overcome appellant's affirmative defense of mistake-of-fact. As previously discussed, the DVD showed that appellant acted together in synchrony with her daughter to accomplish the price-switch on the purse. Specifically, the DVD showed appellant hand her daughter the purse and that appellant stood nearby, glancing occasionally, while her daughter switched the price tag with a tag from a cheaper purse. After her daughter completed the price-switch, she gave the purse back to appellant, who then purchased it. Contextually, appellant had already appropriated the purple shirt, which she put on under her outer sweater when she was inside the fitting room with her daughter. In addition, Detective Martinez was an eyewitness, and he testified regarding the price-switch on the purse. He further testified that appellant, when questioned about her conduct, stated that "[s]he said I thought it was easy and I wasn't thinking."

13

We hold the evidence was sufficient to support the jury's finding against appellant's affirmative defense for mistake-of-fact. *See id.* at 669–71. We overrule appellant's eighth issue and the remainder of appellant's seventh issue.

## IV. JURY CHARGE ERROR

Appellant's second and third issues assert jury-charge error. By her second issue, appellant contends the jury charge was constitutionally defective and deprived her of due process because it did not instruct the jury that it could convict appellant only if it found appellant had knowledge of her daughter's "'knowing deception' by 'switching the price-tag'. . . ." *See* U.S. CONST. amend XIV. By her third issue, appellant asserts the trial court erred by failing to include a definition of "deception" in the jury charge. *See* TEX. PENAL CODE ANN. § 31.01(1)(A–E) (definitions of deception). No such objections were made at trial.[5]

### A.    Standard of Review

When an appellate court is presented with an argument that a trial court committed jury-charge error, the reviewing court must conduct a two-step inquiry: "First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal."

---

[5]    Although appellant "objected" before trial began to the trial court's omission of a definition for "deception," appellant failed to timely object during the jury charge conference. Moreover, as appellant notes in her brief, the trial court never ruled on the pretrial "objections," thus precluding them from preserving the issues. *See* TEX. R. APP. P. 33.1. Interestingly, the trial court actually used appellant's proposed thirteen-page jury charge, subject to certain omissions made because of the State's objections. Appellant's proposed charge did not include a definition of deception.

Based on the objections and discussion during the jury charge conference, none of the omissions from appellant's proposed charge involved appellant's current challenges regarding "knowledge" and "deception." After a lengthy jury charge conference, during which appellant requested six specific instructions to be included in the jury charge, the parties ultimately agreed on the jury charge as presented. As such, appellant never mentioned, by timely objection or otherwise, the requested instruction and definition challenged on appeal.

14

*Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (en banc); *see Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). Once an appellate court finds jury-charge error, it applies one of the two following standards of review: "Where there has been a timely objection made at trial, an appellate court will search for only 'some harm.' By contrast, where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" *Mann*, 964 S.W.2d at 641 (quoting *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994)).

## B. Discussion

### 1. Knowledge of Deception

We first consider appellant's "knowledge of deception" argument. The record shows that the trial properly instructed the jury to convict only if it found appellant had knowledge of her daughter's "'knowing deception' by 'switching the price-tag'. . . ." More specifically, the jury charge explicitly required the jury, in order to convict appellant under the law of parties, to find:

> [Appellant's] daughter did then and there intentionally, knowingly, and unlawfully appropriate by acquiring and otherwise exercising control over property, other than real property, namely: earrings, one purse, five underwear, and two shirts . . . and **that [appellant] knew of the intent, if any, of her daughter to unlawfully appropriate the above listed property** . . . and [appellant] acted with the intent to promote or assist the commission by her daughter . . . [and] solicited, encouraged, directed, aided, or attempted to aid her daughter to commit the offense . . . .

(emphasis added).

The jury charge, contrary to appellant's contention, includes the mens rea finding—knowledge of the daughter's intentional or knowing unlawful appropriation. The daughter's "knowing deception" via switching the purse's price tag was the manner by

15

which she unlawfully appropriated it, as shown by the evidence at trial.   There being no error, we overrule appellant's second issue.

## 2. Definition of "Deception"

We next review appellant's third issue, by which she argues the trial court failed to define "deception" in the jury charge.   The term "deception" is relevant because, to convict appellant of theft, the jury is required to find that the appropriation was without the owner's "effective consent," a term that the jury charge defines, in part, by correctly stating, "[c]onsent is not effective if knowingly induced by deception."   Assuming without deciding that the trial court should have included the definition in the charge, we hold that the error did not cause egregious harm under the record in this case.[6]

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.   *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2007)).   In sum, the error must have been so harmful as to effectively deny the accused a fair and impartial trial.   *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).   Egregious harm from an unobjected-to error in the jury charge is a difficult standard to prove and such a determination must be done on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

---

[6] Appellant's reliance on *MacDougal v. State* is misplaced.   S*ee* 702 S.W.2d 650 (Tex. Crim. App. 1986) (en banc).   In *MacDougal*, the court held that the trial court's refusal to include the defendant's requested definition of "deception" in the jury charge constituted "some harm."   *Id.* at 652.   Because appellant failed to timely object to the trial court's omission of the term, however, we review appellant's issue for egregious harm.   *See Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (en banc). Moreover, *MacDougal* did not involve party culpability.   *See* 702 S.W.2d at 651–52.

In determining whether appellant was deprived of a fair and impartial trial, we review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* (quoting *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc)). We will examine "any . . . part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id.* at 490 (quoting *Almanza,* 686 S.W.2d at 174).

First, in looking at the entire jury charge, it is clear that the jury was to find theft only upon concluding that the property was taken without the owner's effective consent. Second and third, the state of the evidence and appellant's defense turned on whether appellant knew of her daughter's price-switch, not on whether the actual price-switch constituted deception, which appellant does not address. As exemplified in appellant's jury argument and mistake-of-fact defense, appellant's defensive argument was that she was unaware of her daughter's conduct and could not therefore be guilty of deception. This argument is less concerned with the term "deception" as it is the sufficiency of the evidence to convict appellant as a party to the price-switch. Moreover, as previously discussed, the evidence showed that appellant was aware of the price-switch. Fourth, in considering any other relevant information, we note that appellant does not dispute stealing a shirt, which occurred a few minutes before the price-switch and in the same, small fitting room in which her daughter appropriated other merchandise. It strains credulity to conclude appellant was completely unaware of her daughter's conduct in the fitting room, where appellant coincidentally stole the shirt. None of these items were

17

taken with Macy's consent, and their appropriation provides a probative context to the price-switch. Viewing the appellant's entire visit to Macy's as a whole, we conclude she and her daughter took concerted action to appropriate several items of property without the effective consent of Macy's. Therefore, based upon the entire jury charge, appellant's jury argument, the state of the evidence, appellant's defense, and any other relevant information revealed in the record as a whole, we conclude that any error in omitting the definition of "deception" in the jury charge was not egregious. *See id.* at 489; *Almanza,* 686 S.W.2d at 171.

## V. ORAL PRONOUNCEMENT OF SUSPENSION

By her first issue, appellant argues that the trial court improperly included a $650.00 fine in the written judgment because the trial court suspended the $650.00 fine during the oral pronouncement of the sentence. Appellant contends that if a variation exists between a trial court's oral pronouncement of a sentence and the written judgment, the oral pronouncement controls. *See, e.g., Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004); *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). After reviewing the record, however, we conclude there is no variance between the oral pronouncement and the written judgment.

The trial court's oral pronouncement of appellant's sentence was as follows: "Here's the sentence: $650 fine plus court costs, 90 days in jail suspended and placed on one year probation . . . ." After appellant's counsel moved to shorten the probation and sentence, the trial court responded, "We'll keep it at 650 plus court costs, 90 days suspended, placed on nine months probation, and then no community hours, report by

18

mail." Although appellant construes the trial court's statements to suspend both the confinement and the fine, we conclude the trial court suspended the confinement and left the fine intact. We overrule appellant's first issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of July, 2013.